[No. 12683. In Bank. — December 2, 1890.]

## QUONG TUE SING, APPELLANT, *v.* ANGLO–NEVADA ASSURANCE CORPORATION, RESPONDENT.

INSURANCE — CANCELLATION OF POLICY — COMPLIANCE WITH TERMS OF POLICY — WAIVER. — In order to defeat an action upon a policy of insurance on the ground that the policy was canceled, it must be shown either that the conditions upon which the company was allowed to cancel the policy were strictly complied with, or that the insured, knowing all the facts, waived such compliance.

ID. — LIMITED AUTHORITY OF AGENT TO PROCURE INSURANCE — TENDER OF UNEARNED PREMIUM — WAIVER. — An agent or broker authorized to procure insurance is not thereby made the agent of the insured to cancel the policy, and has no authority to bind him, either by the acceptance of a strict tender of the unearned premium, or by the waiver of such tender, if insufficient, when such acts are not expressly authorized or ratified by the insured.

ID. — INSUFFICIENT TENDER. — Where an insurance policy provides for a cancellation at the option of the insurers, on giving notice to that effect, and refunding or tendering a ratable proportion of the premium for the unexpired term of the policy to the insured, there must be an actual tender to the insured, or to his authorized agent, of the full amount of the unearned premium, and a tender of only a part of the premium due, and of another policy of insurance in another company, for the balance, is not sufficient.

ID. — INSUFFICIENT NOTICE OF CANCELLATION. — Notice of intention by the insurers to cancel a policy is not properly given, when the broker who procured the policy, but had no authority to cancel it as the agent of the insured, simply informs the insured that his policy had been canceled, and that he had no insurance.

ID. — WAIVER OF NOTICE AND TENDER — POLICY GIVEN IN PART PAYMENT. — Where the insured, upon an attempted cancellation of the policy by the insurers, has not consented to accept anything in lieu of the policy, except another policy for a like amount, or to accept less than the full amount of the unearned premium due him on a cancellation, and has not delivered up the policy, the fact that, on the strength of an erroneous statement of the agent who procured his insurance that the policy sued on had been canceled, and that he had no insurance, he kept a policy in another company, given him by the insurers in part payment of the premium due, does not amount to a waiver of proper notice of cancellation or of the strict tender required by the policy.

APPEAL from a judgment of the Superior Court of Santa Clara County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Lamar & Castle*, and *J. B. Lamar*, for Appellant.

To relieve an insurance company from liability, actual payment of the sum to be refunded must be made. (*Hathorn* v. *Germania Ins. Co.*, 55 Barb. 28; *Van Valkenburgh* v. *Lenox F. Ins. Co.*, 51 N. Y. 465; *Ætna Co.* v. *Maguire*, 51 Ill. 342; *Holden* v. *Putnam Fire Ins. Co.*, 46 N. Y. 1; 7 Am. Rep. 287; *Bennett* v. *Maryland Fire Ins. Co.*, 14 Blatch. 422; *Griffey* v. *N. Y. Cent. Ins. Co.*, 100 N. Y. 417; 53 Am. Rep. 202.) An agent to procure insurance has no authority to terminate it or bind the assured by receiving notice of cancellation or payment of unearned premium. (*Indiana Ins. Co.* v. *Hartwell*, 100 Ind. 566; *White* v. *Connecticut Fire Ins. Co.*, 120 Mass. 330; *Rothschild* v. *American Cen. Ins. Co.*, 5 Mo. App. 596; *Bedy* v. *Hartford Fire Ins. Co.*, 36 Wis. 157; *Grace* v. *American Cent. Ins. Co.*, 109 U. S. 278; *Broadwater* v. *Lion Fire Ins. Co.*, 34 Minn. 465; *Bennett* v. *City Ins. Co.*, 115 Mass. 241; 1 Wood on Fire Insurance, 2d ed., 337; *Hermann* v. *Niagara Fire Ins. Co.*, 100 N. Y. 411; 53 Am. Rep. 197; *Lebanon Mut. Ins. Co.* v. *Humes*, 5 Curt. 211; *Mutual Assurance Soc.* v. *Scottish U. & N. I. Co.*, 84 Va. 116; 10 Am. St. Rep. 819; *N. A. Ins. Co.* v. *Forcheimer*, 86 Ala. 541; *Niagara Fire Ins. Co.* v. *Raden*, 87 Ala. 311; 13 Am. St. Rep. 36.) The conditions of the policy in regard to cancellation must be strictly complied with. (May on Insurance, secs. 67, 574; *Scott* v. *Sun Fire Office*, 133 Pa. St. 322.)

*McAllister & Bergin*, and *T. I. Bergin*, for Respondent.

The personal acceptance by the defendant of the policy in another company was an acceptance of the cancellation, though the policy was not formally surrendered, and the unearned premium not actually paid. (*Hillock* v. *Traders' Ins. Co.*, 54 Mich. 532; *Hopkins* v. *Phœnix Ins. Co.*, 78 Iowa, 344; *Stone* v. *Franklin Ins. Co.*, 105 N. Y. 543, 547; *Kirby* v. *United States Co.*, 13 Lea, 343.)

WORKS, J. — This is an action on a policy of fire insurance. The only question in the case is, whether the policy sued on was canceled before the fire occurred or not.

The policy was procured by one Brandon, acting as a broker, from the local agent of the respondent, and who was paid by such agent a commission of fifteen per cent. The company was not satisfied with the risk, and the local agent was notified to cancel it. The policy contained this clause: —

"This insurance may also be terminated at any time, at the option of this corporation, on giving notice to that effect, and refunding or tendering a ratable proportion of the premium for the unexpired term of this policy, to any person named in this policy, whether as owner, mortgagee, or otherwise.

"It is a part of this contract that any person other than the assured, or the duly authorized agent of this corporation, who may have procured this insurance to be taken by this corporation shall be deemed to be the agent of the assured named in this policy, and not of this corporation, under any circumstances whatever, or in any transaction relating to this insurance."

The local agent attempted to cancel the policy through Brandon. Brandon represented to him that the appellant wanted other insurance, and the agent reported to him that he could place a part of the insurance for $750, which was half of the amount of the original risk, in another company. He accordingly did so. The amount of the premium on the policy sued on which had been paid by Brandon for the appellant was $110. The local agent gave Brandon the policy of insurance in the other company, the premium for which was $60, and paid him the balance of the $110 in money.

What took place between Brandon and the appellant is best told in his own words. He testified: "I went down to see Quong Tue Sing. I did not see him there;

he was not in; and next morning I went down and informed him *that his policy was canceled;* that the company would not carry it any longer. He seemed somewhat aggrieved over the matter, and he and several other Chinamen that were in the place at the time talked the matter over, and said they wanted their insurance, — wanted to carry their insurance; I told them I would go and place it if I could."

He then tells of his efforts to place the insurance, and the fact that he procured the $750 policy above mentioned, and testified further: "I started to go to the Chinamen, to deliver to the firm of Quong Tue Sing & Co. the money and the policy. I met Mr. William Patterson, the county license collector, on the road, and asked him to accompany me, which he did. I went in and talked to the one of the firm which was the butcher, and the one that was the book-keeper, both of which have been on the stand this morning, — the one that sits, with the dark blue clothes, and the one this side of him, — and' I stated to them, — neither of which could talk very plain English; but I always got along with the Chinaman well enough, — I told them the condition of affairs; there was some little talk between them as to the matter; I tendered them at that time, in the presence of Mr. Patterson, the $750 policy that I received from Mr. Wright, to which was added the amount of my premium, which would make it $50; I tendered them $60 in a policy for $750, together with $50 in coin, a portion of which was in silver; the Chinaman would listen to nothing. I asked the one that has not been on the stand, who is sitting back there, who seemed to understand English more than the rest, or better than the rest, to go for Charley and bring him in, — that is, Quong Tue Sing; he went out and tried to find him, and could not find him for quite a little while; they came in and talked about the matter, and the Chinaman told me that it was a unanimous opinion of theirs that they wanted it all in one company, and then

came back and they said that they wanted it right away; I came back and I saw Mr. William Stewart, — William D. Stewart; Mr. Patterson left me; though I told them at that time that they had better let this amount remain, as they had no insurance whatever. *I told them that there was no insurance on their stock of goods,* and they had better receive this $750, and they did take it. Quong Tue Sing was not present when the policy was taken, but the other two members of the firm were present; they accepted the policy, but they would not accept the money, and wanted nothing at all to do with it; they wanted all one policy."

The court, on this point, finds as follows: "Thereafter, and on the 28th or 29th or 30th of April, 1887, and certainly before the first day of May, 1887, the said Brandon visited the store of plaintiffs at said San José, and then and there delivered to plaintiffs aforesaid policy of insurance for $750, which plaintiffs, after they were told by Brandon that they then had no insurance on their said property, accepted and received and kept, and which neither they nor their assignee have ever since returned to said Brandon or to said Wright or to said Prussian National Insurance Company of Stettin; that said Brandon, also, then and there, and at the same time that he delivered said $750 policy to plaintiffs, tendered to plaintiffs, as part of the return premium due them upon the cancellation of the policy of insurance sued on, the sum of $50, of which $45 was in lawful gold coin of the United States, and $5 in lawful silver coin of the United States. Plaintiffs did not then and there receive said $50 so tendered them by said Brandon, but they then and there authorized him to procure for them $1,500 of insurance on the same personal property insured by the policy sued on herein, and when he had obtained such $1,500 insurance, they authorized him to cancel said $750 policy of insurance."

And the court, as a conclusion, found that by the trans-

action between the local agent of the respondent, and between Brandon and the appellant, as above set out, "the policy of insurance sued on was properly canceled, and a correct proportion of the unearned premium thereon returned to plaintiffs before the destruction of the insured property by the fire mentioned in the complaint."

It is contended by the appellant that neither the evidence nor the findings of the court sustain or justify this conclusion.

To maintain the conclusion reached by the court below, it must have been shown either that the conditions upon which the company was allowed to cancel the policy were strictly complied with, or that the insured, knowing all the facts, waived such compliance. (*Bennett* v. *City Insurance Co.*, 115 Mass. 241.) It is an undisputed fact that the agent of the company did not act directly with the insured. The tender of so much of the unearned premium as was returned, was tendered, not to the appellant, but to Brandon. Therefore, in order to render this tender effective, if otherwise sufficient, it was necessary to show either that Brandon was at the time the authorized agent of the insured for the purposes of the cancellation of the policy, or that, not being authorized at the time, his acts were ratified by the insured.

There is an entire lack of any evidence even tending to show that Brandon had any authority to receive the unearned premium under the policy, or to accept a cancellation of it on any terms, unless such agency is established by a mere showing that he was the appellant's agent in procuring the insurance. That an agent authorized to procure insurance is not thereby made the agent of the insured to cancel the policy is well settled. (*Hermann* v. *Niagara Fire Ins. Co.*, 100 N. Y. 411; 53 Am. Rep. 197; *Grace* v. *American Cent. Ins. Co.*, 109 U. S. 278; *Broadwater* v. *Lion Fire Ins. Co.*, 34 Minn.

465; *White* v. *Conn. Fire Ins. Co.*, 120 Mass. 330; *Indiana Ins. Co.* v. *Hartwell*, 100 Ind. 566.) This being so, he was not the agent of the insured, and had no authority to bind him, either by the acceptance of a strict tender of the unearned premium, or the waiver of such tender by the acceptance of an insufficient one.

The tender in this case was not sufficient. There must have been an actual tender to the appellant, or his authorized agent, of the full amount of the unearned premium. (May on Insurance, sec. 69; *White* v. *Conn. Fire Ins. Co.*, 120 Mass. 330; *Indiana Ins. Co.* v. *Hartwell*, 100 Ind. 566.) This tender was not made. There was a tender of only a part of the premium, and another policy of insurance in another company. It only remains to inquire, therefore, whether the appellant in any way waived the repayment of the unearned premium. We are quite clear that he did not. Two things were necessary in order to effect the cancellation, viz., notice of intention to cancel, and the return of the unearned premium. The notice required was not given. Brandon, who, as we have seen, was not the agent of the appellant, simply informed the latter that his policy *had been canceled*, and that he *had no insurance*, neither of which statements was true.

It is contended by the respondent that because the appellant accepted a policy in another company he thereby waived the notice and strict tender required by the policy. But the evidence shows conclusively that he did not consent to accept the policy for $750 tendered him, but refused to do so, although it was left with him, and insisted upon having $1,500 insurance all in one company, and that he refused to accept the money tendered him. He did express a desire and willingness to procure and accept another policy for fifteen hundred dollars, and perhaps if such a policy had been procured for him he would have been willing to accept it and surrender the one sued on. But such a policy was not pro-

cured for him; he never at any time consented to accept anything else in lieu of the policy sued on, or to accept less than the full amount of the premium due him on a cancellation, or to deliver up the policy. He kept the $750 policy on the strength of the erroneous statement of Brandon that the policy sued on had been canceled, and that he had no insurance.

Counsel for respondent rely mainly on the case of *Hillock* v. *Traders' Ins. Co.*, 54 Mich. 531, to sustain the position that the appellant waived a strict compliance with the conditions necessary to effect a cancellation of the policy. But that case differs materially from this. The conclusion reached by the court in that case was, that actual tender of the unearned premium was unnecessary to the cancellation of the insurance policy, because the "*minds of the parties had met on the point that the policy was to be canceled.*" Here the minds of the parties had not met. No assent on the part of the insured is shown.

Judgment and order reversed, and cause remanded for a new trial.

MCFARLAND, J., PATERSON, J., SHARPSTEIN, J., and THORNTON, J., concurred.

Fox, J., dissented.