[Civ. No. 1481.  First Appellate District.—May 18, 1916.]

## H. M. FERRAR, Respondent, v. THE WESTERN ASSURANCE COMPANY (a Corporation), Appellant.

FIRE INSURANCE—PAROL CONTRACT—VALIDITY OF.—Where an insurance agent authorized to accept risks, accepts a risk by parol, promising to deliver the policy, the insurance begins with the acceptance, and the contract in parol continues until the policy is delivered, when it is superseded by the policy.

ID.—AGENCY TO PROCURE INSURANCE—EVIDENCE—SCOPE OF AUTHORITY. Where a soliciting insurance agent is in the first instance given authority to place insurance, and such authority is thereafter extended to keeping the property insured from year to year, he thereby becomes the general agent of the insured with authority to insure the property and to keep it insured, and, as an incident thereto, to accept notice of cancellation of a policy and procure insurance in another company.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial.  George A. Sturtevant, Judge.

The facts are stated in the opinion of the court.

J. F. Riley, for Appellant.

Bacigalupi & Elkus, and Jewel Alexander, for Respondent.

KERRIGAN, J.—This is an appeal from a judgment in favor of the plaintiff, and from an order denying defendant's motion for a new trial in an action brought against the defendant to recover the sum of one thousand dollars, the amount of a fire insurance policy claimed by plaintiff to have been issued by the defendant upon certain furniture belonging to the former's assignor.

Several years before the fire which destroyed the furniture in question, Mrs. Margaret M. Plier, its owner, had authorized Clarence Coleman, an insurance broker, to place one thousand dollars insurance thereon, the property being contained in a certain hotel in San Francisco.  Coleman did so, selecting the St. Paul Fire and Marine Insurance Company.  At that time, and up to the time of the fire, Mrs.

Plier was carrying other insurance upon the furniture in the sum of five hundred dollars, which was placed independently of Coleman. Each year, when the one thousand dollar policy was about to expire, Coleman would renew it, and Mrs. Plier would pay the premium. On one occasion, a small loss by fire having occurred, he attended to the matter of its adjustment in so satisfactory a manner to the insured that she told him to thereafter take care of her insurance and to keep her covered in good companies in the sum of one thousand dollars. On May 15, 1911, the St. Paul Fire and Marine Insurance Company notified Coleman in writing that after an examination of the premises in which the insured property was situated it felt constrained to cancel its policy, and thereby gave Coleman the five days' notice of cancellation as required by the terms of the policy. Coleman immediately attempted to see Mrs. Plier in order to obtain possession of the policy for the purpose of returning it to the company, whereupon she would be entitled to be repaid the unearned premium thereon. Failing to see Mrs. Plier, Coleman, on May 18, 1911, offered to the defendant company this insurance. The latter's "counterman," who was authorized to accept insurance, refused to take the responsibility in this instance of accepting the risk, and referred Coleman to the manager of the company, one Miller. After some persuasion on the part of the broker, Miller agreed to take the insurance, and on May 20th a written application was made to the company. On May 27th, Coleman not having received the policy, telephoned to the office of the defendant and inquired about it, and was informed that the policy was ready but not signed, and that it would be sent over to him on the following Monday morning. Early that Monday morning (May 29, 1911), the fire occurred and the property insured was totally destroyed. From May 20th, when the application for the insurance was left with the company, up to the time of the fire, the defendant appears to have considered that it was carrying the risk. Entries in its books made in the ordinary course of business so indicated, and this insurance was included in a statement made to the home office of the company of business recently transacted, and after the fire a statement was sent to Coleman showing that he had been charged with the premium on this insurance.

We do not doubt from all the circumstances of the case that the finding of the court that this property was covered by a parol contract of insurance at the time of the fire is amply sustained by the evidence. Such contracts under similar circumstances are not uncommon. (*Field* v. *Lamson & Goodnow Mfg. Co.*, 162 Mass. 388, [27 L. R. A. 136, 38 N. E. 1126].) They are valid and enforceable in this state. (*Harron* v. *City of London Fire Ins. Co.*, 88 Cal. 16, [25 Pac. 982]; *Gold* v. *Sun Ins. Co.*, 73 Cal. 216, 218, [14 Pac. 786]; *American Can Co.* v. *Agricultural Ins. Co.*, 12 Cal. App. 133, [106 Pac. 720].)

"If an agent, authorized to accept risks, accepts a risk by parol, promising to deliver the policy, the insurance begins with the acceptance, and the contract in parol continues until the policy is delivered, when it is superseded by the policy." (*Western Assurance Co.* v. *McAlpin*, 23 Ind. App. 220, [77 Am. St. Rep. 423, 55 N. E. 119].)

The only really serious question in this case is whether or not Clarence Coleman was acting within the scope of his authority in placing this insurance. Notwithstanding that the property which it covered according to the findings of the court—based on sufficient evidence—was reasonably worth approximately two thousand five hundred dollars, its owner intended to carry no more than one thousand five hundred dollars insurance upon it, of which she had personally attended to placing five hundred dollars, and was relying upon Coleman to take care of the remainder. At the time of the fire she knew nothing about the contemplated cancellation or the new insurance. Upon learning of the fire, and of the condition of her insurance, she filed proofs of loss with all three companies. From the other companies she obtained in settlement of the loss approximately the amount of the face of the policies, but the defendant denied responsibility upon its policy and refused to pay, whereupon the insured assigned her claim to the plaintiff, who at once commenced this action.

We think the defendant is liable. Perhaps when Coleman placed the first insurance for Mrs. Plier he was merely an insurance solicitor, whose authority was quite limited, but later, as we have seen, she extended his authority by telling him "to take care of her insurance and to see that she was covered to the amount of $1,000." At another place in the record she is shown to have testified as follows:

"A. About the Western Assurance, I never told him what company to insure me in. I just said, 'Insure me for $1,000,' and that was all. As long as it was covered, that is all I cared.

"Q. As long as it was covered?

"A. Yes, sir.

"Q. It says, 'I looked upon him as a solicitor only.'

"A. I don't know about solicitor—I only told him to insure me and keep me insured.

"Q. To keep you insured?

"A. To keep me covered—that is all I cared—as long as I was in a good company."

Coleman's testimony we think tends to corroborate the testimony of Mrs. Plier; but we are satisfied that the direction by Mrs. Plier to Coleman just referred to made him more than a mere soliciting insurance agent, and constituted him, as found by the court, her general agent to keep her insured to the extent of one thousand dollars in respect to the property here involved. Being her general agent for this purpose we think he was authorized as an incident of his employment to accept and to act upon a notice of cancellation. (*Stevenson* v. *Sun Ins. Office*, 17 Cal. App. 280, [119 Pac. 529].) "A general agent with power to insure property and to keep it insured may accept notice of cancellation and procure substituted insurance or renewal of insurance in another company." (22 Cyc. 1447; *Aetna Ins. Co.* v. *Renno*, 96 Miss. 172, [50 South. 563]; *Phoenix Ins. Co.* v. *State*, 76 Ark. 180, [6 Ann. Cas. 440, 88 S. W. 917]; *Schauer* v. *Queen Ins. Co.*, 88 Wis. 561, [60 N. W. 994]; *Todd* v. *German-American Ins. Co.*, 2 Ga. App. 789, [59 S. E. 94].)

The record does not show upon what ground the insured, after the cancellation of the policy, obtained a settlement of her claim against the St. Paul company. Evidently for some good reason it deemed itself responsible on the policy and paid the loss. The trial court found that the policy in that company had been canceled. However, the circumstances of that transaction are not before us, and therefore have no bearing upon the determination of this case. Here it appears that Coleman, in the careful discharge of his duty as general agent, effected a valid contract of insurance with the defendant upon his principal's property, the obligation

of which is not dependent upon the transaction with the St. Paul company.

But even if Coleman were not the general agent for the assured, still the finding of the court as to his authority would have to be sustained on the theory that his action in procuring the policy in the defendant company was ratified by his principal. In filing her claim of loss and demanding payment, she ratified the action of her agent. The authorities seem to hold that a ratification, though made subsequent to a loss, is valid.

In the case of *Boutwell* v. *Globe & Rutgers Fire Ins. Co.,* 193 N. Y. 323, [85 N. E. 1087], an agent was instructed by his principal to carry a certain amount of insurance on each of two certain barges. The agent, being in some doubt as to the amount in force on the barges, and endeavoring to carry out his instructions, took out other insurance, and advised his principal of what he had done. Upon discovering that he had contracted for a larger amount than his instructions warranted—which was on the following day—he returned the policies to the insurance company, requesting in effect that the transaction be treated as if the policies had never been issued, and so be without premium charge. This the defendant refused, but suggested that the insurance would be canceled at short rates. With the proposition in this shape one of the barges was destroyed, whereupon the owner tendered defendant the premium upon the policy issued, and later duly presented proof thereunder. In that case the agent does not seem to have been given as wide a power as the broker here; and while the opinion proceeds upon the theory that under the circumstances of the case the defendant was estopped from denying its liability, still to so hold it was necessary—and accordingly the court did hold—that the owner had a legal right to ratify the acts of his agent and accept the contract even after the occurring of the loss.

In the case of *Todd* v. *German-American Ins. Co.,* 2 Ga. App. 789, [59 S. E. 94], the court say that assuming that Turpin (the agent) acted for Todd, and procured from the defendant a policy of insurance in Todd's favor, and paid the premium or became responsible to pay the same, Todd could, after the fire, upon discovery of the fact that Turpin had assumed to act for him, ratify the contract and hold the

insurance company upon it. The court observes that it must be admitted that in the case of a ratification the parties do not generally stand upon even terms, since the principal may always elect to ratify the act if it is for his benefit, and disavow it if it is to his injury, but this consequence has never been allowed to overcome the force of the general doctrine.

In the case of *Phoenix Ins. Co.* v. *Hancock*, 123 Cal. 222, [55 Pac. 905], the defendant took out insurance in favor of an estate in which he was an heir. Later, upon demand, he refused to pay the premium, whereupon suit was commenced to compel him so to do. In sustaining a judgment against him the court thus states the law: ''Although defendant had no authority to procure insurance for the administratrix, yet she could have ratified his act even after the occurrence of a loss.'' (See, also, 1 Joyce on Insurance, sec. 642; 1 May on Insurance, 4th ed., sec. 122A; 2 Clement on Fire Insurance, 481; 1 Wood on Fire Insurance, sec. 136, p. 320.)

The judgment and order are affirmed.

Lennon, P. J., and Richards, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 17, 1916, and the following opinion then rendered thereon:

THE COURT.—The application for a hearing in this court after decision by the district court of appeal of the first appellate district is denied.

In denying the application we deem it proper to say that we do not express any view on the question of ratification discussed in the opinion. A decision on that question is not essential to a determination of the case, in view of what is correctly held in the opinion as to the status and authority of Coleman.