[Civ. No. 10443.   Second Appellate District, Division One.—February 25, 1936.]

EMILY JANE HOOKER et al., Respondents, v. AMERICAN INDEMNITY COMPANY (a Corporation), Appellant.

Hulen C. Callaway, Mathes & Sheppard, W. C. Mathes and Melvin Smith for Appellant.

Ezra Neff for Respondents.

ROTH, J., *pro tem.*—Plaintiffs are the heirs at law of T. O. Hooker, who, in the forenoon of August 22, 1933, was killed by a truck operated and owned by Hawkins Company, Ltd., a trucking concern (hereinafter referred to as insured). In an action for wrongful death brought by plaintiffs against insured they recovered a judgment of $6,720. This action by plaintiffs is predicated on said judgment and is brought against the American Indemnity Company, appellant herein, the alleged insurance carrier of insured, since the appellant refused to pay the judgment recovered against insured or any

part thereof. Appellant claims that it carried no insurance covering the truck in question at the time of the accident.

Insured did its insurance business through a regularly licensed insurance broker, one A. E. Nicholls (hereinafter for convenience referred to as broker). On August 9, 1933, pursuant to the request of insured, broker obtained for it a policy issued by appellant insuring it against public liability for personal injuries with limits of $5,000 for injuries or death to one person, and $10,000 for injuries or death to two or more. This insurance became effective as of that date, to wit: August 9, 1933. The policy of insurance was delivered by appellant to the broker and kept by the broker in his own possession.

On August 15, 1933, broker wrote to insured advising it that coverage for public liability had been effected, and informing insured that a down payment of $67.02 was required. In the letter the broker requested the insured, pursuant to what was apparently their previous understanding, for an order on Wood Rock & Sand Company (for whom the insured was doing hauling) for said payment. The balance of the premium was to be financed by the execution of certain agreements which were inclosed in said letter.

On or about August 18, 1933, broker had a conversation with the insured, in which, according to the broker, the insured told him that its trucks were not working and that it would like to get some form of insurance which would carry no premium while the trucks were idle, but which would protect it when they were in work. The broker, according to his testimony, informed insured that this could not be arranged, but that the present insurance could be canceled and new insurance written when the trucks were again put to work. The testimony of the insured on this point of cancellation, which is a decisive one in the case, was that he told the broker: "I must have insurance, Mr. Nicholls, regardless of the cost of premium, so I will have to continue the policy as it is then . . . " Broker, nevertheless, according to his testimony, did on August 19, 1933, return the policy in question to appellant and requested its cancellation, and appellant did on August 21, 1933, cancel the policy on its books. In the forenoon of August 22, 1933, the accident which resulted in the death of T. O. Hooker occurred. On the afternoon of the same day, the insured called at the office of broker, made a payment of

$20 and signed an order on Wood Rock & Sand Company for a balance, obtaining a receipt signed by an employee of broker. Upon his return to his office, broker learned that the insured had made the foregoing payment, and ordered reissued a policy from appellant. A policy was reissued, effective as of noon, August 22, 1933.

On August 23, 1933, broker heard of the accident, whereupon he immediately addressed a letter to insured, advising insured that he had canceled the first policy pursuant to the conversation he had with insured on August 18, 1933. In said letter broker advised insured that he had heard of the cash payment made and the order left with his employee, and had assumed that the insured had put his trucks to work again, as a result of which he requested insurance company to reissue the policy, but that it had been reissued as of noon, August 22, 1933, and that insured had no coverage on his trucks at the time the accident happened. As has been pointed out, insured denied that he authorized any cancellation in said conversation or at all. A jury, before which the case was tried, brought in a verdict against the appellant for $5,000. Judgment was entered thereon, and this appeal is from that judgment.

The immediate and decisive question is whether the policy originally issued on August 9, 1933, was in full force and effect in the forenoon of August 22, 1933. The answer to this question is dependent on the authority of the broker to cancel it.

At the outset it should be made clear that appellant wrote the insurance and delivered the policy to the broker, who ordered the policy on his credit, making separate arrangements with the insured for deferred payment of premium. There is no evidence that appellant looked to anyone but the broker for prompt payment of the premiums of said policy. Appellant had no direct interest in, and was in no way affected by, any arrangements made between the insured and the broker for payment of premium. The policy took effect from its date of issuance and delivery, and unless there was an arrangement to the contrary, the fact that the premium on the policy was unpaid by the insured to the broker at the time of the accident, or unpaid by the broker to appellant, does not in any manner affect the enforcement of the terms of the insurance policy against appellant. (*Union Ins. Co.* v. *Ameri-*

*can Fire Ins. Co.,* 107 Cal. 327 [40 Pac. 431, 48 Am. St. Rep. 140, 28 L. R. A. 692] ; *Anderson* v. *Mutual Life Ins. Co.,* 164 Cal. 712, 716 [130 Pac. 726, Ann. Cas. 1914B, 903] ; *Bloom* v. *Pacific Mutual Life Ins. Co.,* 65 Cal. App. 419 [259 Pac. 496].) Indeed, neither the broker nor appellant contends that the policy was canceled for nonpayment of premium. ■ The sole point with regard to cancellation is that it was *authorized* by the insured.

Generally speaking, a broker who is engaged to procure insurance has no authority to cancel such insurance. Section 633a of the Political Code defines a broker as one who " . . . for compensation and on behalf of another party solicits, negotiates, or effects contracts of surety, indemnity, or insurance other than life . . . ". It has been held by the courts of this state that, "An agent authorized to procure insurance is not thereby made the agent of the insured to cancel the policy . . . " (*Quong Tue Sing* v. *Anglo-Nevada Assur. Corp.,* 86 Cal. 566 [25 Pac. 58, 10 L. R. A. 144] ; *Stevenson* v. *Sun Ins. Co.,* 17 Cal. App. 280 [119 Pac. 529] ; *Lauman* v. *Springfield etc. Ins. Co.,* 184 Cal. 650 [195 Pac. 50] ; *Cronenwett* v. *Iowa Underwriters etc. Co.,* 44 Cal. App. 571, 576 [186 Pac. 824].)

Appellant asserts that because the broker had in his possession the insurance policy, he was, so far as appellant was concerned, the ostensible agent of the insured for the purpose of having the policy canceled. Section 2300 of the Civil Code defines ostensible agency as: "An agency is ostensible when the principal intentionally, or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him." Subdivision 5 of section 2355 of the Civil Code provides that: "An agency is terminated" by "the incapacity of the agent to act as such". These two sections must be read together and applied to the facts in the case at bar. In the instant case the jury impliedly found as a fact, from conflicting evidence, that the broker was not authorized to cancel the policy and that he was instructed to keep it alive. In addition, there was ample credible evidence from which the jury was justified in concluding, as the members thereof undoubtedly did, that the policy was not in fact surrendered by the broker to appellant until after the broker had received information about the accident. In this regard the testimony showed that when the insured, after the acci-

dent, made a partial cash payment upon the policy and delivered its order for additional money to apply on the premium, that the insured received a receipt therefor, in which the specific policy was mentioned, and that in order to identify this policy the books of the broker were referred to. It was further developed that it was the custom of the broker to note on his books the cancellation of policies on the date of their cancellation, and that at the time insured received his receipt there was no such evidence of cancellation on the broker's books. Other than the mere fact that the broker had possession of the insurance policy, there was no suggestion of any kind in the evidence to indicate an ostensible agency. The possession of the broker, standing alone, cannot be considered evidence of ostensible agency, since the broker's possession was that of the insured, and as between appellant and the insured, the contract of insurance was valid and in force, irrespective of whether the insured paid the broker or not, and irrespective of whether the policy was in the actual physical possession of the broker or the insured. There was no evidence that as between appellant and the broker that the latter must hold the policy for appellant until the premium therefor had been paid by the insured, or that if not paid promptly or within a certain length of time, the broker must surrender the same for cancellation instead of accepting it for, or delivering it to, or holding it for the insured. There was no evidence that as between broker and insured, that if insured did not pay promptly or within a certain length of time, that broker could cancel the policy. The evidence, in fact, demonstrates that broker did not expect prompt payment, and was making arrangements for payment over a period of time. There was no evidence that broker was a general agent of insured entrusted by insured to handle its insurance in a general way, or that broker at any time in dealing for the insured with appellant or any insurance company, had ever surrendered a contract of insurance for cancellation. The evidence on the contrary supports the jury's conclusion that broker was instructed by insured *not* to cancel. We find nothing in the record which would tend to prove an ostensible agency. (1 Cal. Jur. 714, 741, 742.) The cases cited by appellant (*Kooistra* v. *Rockford Ins. Co.*, 122 Mich. 626 [81 N. W. 568] ; *Fowler Cycle Works* v. *Western Ins. Co.*, 111 Ill. App. 631; *La France Workshop Lampshade Co.* v.

*Buffalo Ins. Co.,* 318 Pa. St. 191 [178 Atl. 1]) are not applicable because in all of them there were ample facts proved from which an authority in the broker to cancel was found to exist. Since there was no evidence of ostensible agency, the trial court properly refused to instruct the jury on that subject.

■ Complaint is made by appellant that the court erred in sustaining an objection to certain testimony he desired to introduce. The broker was asked:

"Q. Did you place other insurance for that company?" Thereupon the following proceedings were had:

"Mr. Neff: Object to it on the ground it is irrelevant and immaterial.

"The Court: I think any other would possibly be immaterial. We are only interested in the—

"Mr. Callaway: I am merely trying to show, Your Honor, that he dealt with them generally and had a right to rely—

"Mr. Neff (interposing): We will stipulate that Mr. Hawkins was the only one who dealt with Mr. Nicholls about insurance.

"Mr. Callaway: Do you deny his authority to buy insurance?

"Mr. Neff: No, we don't deny his authority. We admit he had full authority."

Appellant now contends that the question to which an objection was sustained was preliminary and that his purpose was to prove the authority of the broker to cancel policies. No such intent is suggested by the question nor by the statement of appellant's counsel as to what he was "merely trying to show". In fact the readiness with which the stipulation proffered by respondent was accepted indicates that the subject-matter of the stipulation was all that appellant had in mind. Under such circumstances there was no error in sustaining the objection. (*Merz* v. *Pools,* 82 Cal. App. 12 [254 Pac. 914]; *Snowball* v. *Snowball,* 164 Cal. 476, 479 [129 Pac. 784]; *Whitelaw* v. *Whitelaw,* 122 Cal. App. 260, 263 [9 Pac. (2d) 874]; *Bridges* v. *Fisk,* 53 Cal. App. 117 [200 Pac. 71]; 2 Cal. Jur. 275.)

■ Appellant suggests that the insured ratified the act of the broker in canceling the original policy of insurance when, after receipt of the broker's letter mailed to insured on or about August 23d, the broker informed insured of the can-

cellation and advised insured that the reissued policies did not cover the accident, in spite of which insured continued to pay the premiums on the reissued policies. Insured, however, testified that at the time he made his original payment he paid on the original policy and that after the receipt of the broker's letter he insisted to the broker that he was paying on the original policy. This gave rise to a question of fact which the jury resolved against the insurance company. The answer of the jury on said conflict is conclusive upon us. (*Rhee* v. *L. K. Small Co.*, 83 Cal. App. 339 [256 Pac. 839]; *Woody* v. *Judah Boas Finance Corp.*, 93 Cal. App. 21 [268 Pac. 974].)

■ There is, however, another reason which would prevent any cancellation of said policy by ratification of a cancellation by the insured. Section 2313 of the Civil Code provides: "No unauthorized act can be made valid, retroactively, to the prejudice of third persons, without their consent." The rights of the heirs at law (plaintiffs in this case) of the deceased, T. O. Hooker, had intervened before there was any ratification of the alleged cancellation by the insured. The loss or liability insured against in the insurance policy was for the benefit of these plaintiffs, and when their cause of action accrued no subsequent act of the insured could deprive them of it. (*Title Insurance & Trust Co.* v. *California Dev. Co.*, 168 Cal. 397 [143 Pac. 723]; *Dingley* v. *McDonald*, 124 Cal. 682 [57 Pac. 574]; *Wittenbrock* v. *Bellmer*, 57 Cal. 12; *Krumdick* v. *White*, 107 Cal. 37 [39 Pac. 1066]. See, also, *Taylor* v. *Robinson*, 14 Cal. 396.)

Furthermore, the policy itself expressly made this legal provision a part of its terms. Subdivision (b) of the paragraph on "California Financial Responsibility Act Coverage" provides: "This policy shall not be canceled or annulled as respects any loss or damage by any agreement between the company and the assured after the assured has become responsible for such loss or damage, and any such cancellation or annulment shall be void."

The judgment is affirmed.

York, Acting P. J., and Doran, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 23, 1936, and an appli-

cation by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 21, 1936.

Shenk, J., voted for a hearing.