**TARLETON et al. v. DE VEUVE et al.**

No. 9229.

Circuit Court of Appeals, Ninth Circuit.

July 3, 1940.

Rehearing Denied Sept. 11, 1940.

292

H. N. Mitchell and James D. Meredith, both of Sacramento, Cal., for appellant Tarleton.

O. F. Meldon, of Sacramento, Cal., for appellant McElligott.

Frank L. Murphy, of Sacramento, Cal., for appellees.

Before GARRECHT, HANEY, and HEALY, Circuit Judges.

GARRECHT, Circuit Judge.

This suit was commenced in the Superior Court of California, in and for the County of Sacramento, by the appellants, who are both residents and citizens of the State of California. The appellee The Texas National Insurance Company of Dover, Delaware, is a Delaware corporation and appellee The Security National Fire Insurance Company of Galveston, Texas, is a Texas corporation. These two companies have been authorized to do business in the State of California under the firm name of the San Francisco Underwriters. Because of the diversity of citizenship this cause was removed, upon petition of appellees, to the court below, where it was tried without a jury.

Appellant Mary Ann McElligott, the owner of a certain piece of land located about eight miles north of Sacramento, California, together with the frame store building and two gasoline pumps situated thereon, borrowed $4,000 from appellant Ida Louise Tarleton on April 24, 1926, and to secure the repayment of this loan executed a first deed of trust upon said property. The total principal amount with interest thereon from May 15, 1930, is due and unpaid. There was a provision in said deed of trust to the effect that the borrower agreed "to keep all improvements upon said premises insured for the full insurable value" and that in default thereof the lender "may procure such insurance, paying the premium thereon." It was in pursuance of this agreement that appellant McElligott, in August, 1935, requested one W. V. McGlone, a general insurance agent located in Sacramento, to procure for her fire protection on her property. She instructed him to insure the building for $4,000, with any loss thereon made payable to appellant Ida Louise Tarleton, the mortgagee. The stock and contents of the building were to be insured for the additional sum of $1,000. McGlone was to keep the property insured, in any company he might select. Several companies had declined to insure, or had canceled policies on, this property because it was considered a bad risk, or for other reasons immaterial here.

On or about March 1, 1936, one Hubbs, an agent for the Lumberman's Underwriting Alliance, a company which had canceled a previous policy covering Mrs. McElligott's property, came into McGlone's office, and McGlone sought his aid in securing the insurance. McGlone testified that he told Hubbs "to make up a policy for $5000, $1000 on the stock and $4000 on the building, Mary Ann McElligott's name on the policy with Ida Louise Tarleton as the mortgagee"; that Hubbs "said he couldn't write the business himself for his own company, but he would place it for me [McGlone] in San Francisco." Hubbs then sent in the application to A. J. Ulvilla, his superior, who, in turn, contacted John D. Richards, a general insurance broker located in San Francisco. Richards applied in person at the office of the appellees, where he was issued the policy here involved, together with the attached mortgage clause, duly countersigned and executed by their general agent, Clarence deVeuve. The record does not reveal what arrangements Richards made with them for the payment of the premium. Thereafter the policy, unaccompanied by any bill for the premium, was delivered to Ulvilla, who transmitted it by mail to McGlone. No letter was sent with it, nor were there any instructions about delivery or non-delivery. According to the terms of the policy the protection was to extend over a three-year period, from March 5, 1936, to March 5, 1939. The coverage on the building was given at $4000, with an additional insurance of $1000 on the stock and contents.

The policy executed by the appellees is in the standard form as set forth in Section 2071 of the Insurance Code of California, St.1935, p. 596, and recites in part:

"In Consideration of the Stipulation herein named and of Two Hundred and no/100 Dollars Premium [San Francisco

Underwriters] Does insure Mary Ann Mc-Elligott for the term of three years, * * *.
* * *

"Cancellation. This policy shall be cancelled at any time at the request of the insured, in which case the company shall, upon surrender of this policy, refund the excess of paid premium above the customary short rates for the expired time. This policy may be cancelled at any time, without tender of unearned portion of premium, by the company by giving five (5) days' written notice of cancellation to the insured and to any mortgagee or other party to whom, with the written consent of the company, this policy is made payable, in which case the company shall, upon surrender of the policy or relinquishment of liability thereunder, refund the excess of paid premium above the pro rata premium for the expired time."

Ida Louise Tarleton is named as the mortgagee. The following excerpts are taken from the mortgage rider:

"Subject to the terms, covenants and conditions set forth in this rider, loss or damage (if any) under this policy, on buildings only shall be payable as follows:

"Firstly, to Ida Louise Tarleton as First Mortgagee (or Trustee or Beneficiary under Deed of Trust), as interest may appear, whose mail address is 1403 'H' Street, Sacramento, California.
* * *

"The term 'Mortgagee,' as hereinafter used in this rider, shall (except as otherwise indicated by the context) include all mortgagees, trustees, or beneficiaries under deed of trust hereinabove named.

"Subject to and in consideration of the terms, covenants and conditions set forth in this rider this insurance, as to the interest of the mortgagee only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or other proceedings, or notice of sale relating to said property, nor by any change in the title or ownership of said property, * * *.
* * *

"This company reserves the right to cancel this policy at any time as provided by its terms, but in such case this policy shall continue in force for the benefit only of the mortgagee for ten days after notice to the mortgagee of such cancellation, and

shall then cease; and this Company shall have the right on like notice to cancel this mortgagee clause."

McGlone informed Mrs. McElligott of the arrival of the policy. She thought the policy was paid for, that McGlone had taken care of it, and she promised him that she would pay the $200 premium a little later in the year.

Ulvilla, in his testimony, declared that he had, prior to the return of the policy, "dunned McGlone for the premium upon the request of the company." McGlone, in response to these requests, endeavored to obtain the money from Mrs. Elligott but was unable to contact her because she was ill. ·

On May 2, 1936, McGlone returned the policy to the agent of appellees with a request that it be canceled, explaining that the insured was unable to make payment of the premium because of sickness in the family. Appellant McElligott was unaware that the policy was being returned to the appellees, and was not apprised that McGlone had done so or had suggested cancellation. In this regard McGlone acted upon his own initiative, without consulting with Mrs. Elligott and without her direction or consent.

May 4, 1936, deVeuve, in a letter addressed to Richards, acknowledged receipt of the policy from McGlone, but did not state specifically that it had been canceled. He demanded payment of an earned premium of $30, declaring: "Now, Mr. Richards, if this assured does not wish this insurance, it is her privilege, of course, to cancel; but the fact remains *she has been covered from March 5, 1936, to May 5, 1936,* and had a loss occurred in the meantime, she certainly would have looked to us for payment, and, as you have neglected to send with the policy your check for *the earned premium of $30.00* which *is due this Company,* we are stating that *unless this amount is paid within the next 15 days it will be transferred to our Collection Agency for collection.* (Emphasis supplied.) Appellants seek to escape the force and effect of this letter because written and signed not by deVeuve but in his stead by one Brooks, his cashier. Brooks used a letterhead of the San Francisco Underwriters, and thus concludes the message: "Very truly yours, Clarence deVeuve, General Agent, By [signed] Edw. Brooks, Cashier." The appellees offered no evidence to rebut the

presumption that the cashier had the authority to act as he did. While on the stand Brooks testified that he, in his position as cashier, had knowledge of the issuance of policies, of their cancellation, and of the proration of premiums on cancellation. Approximately a week after the receipt of this communication, which Richards had forwarded to him, McGlone demanded of Mrs. McElligott payment of the $30, without informing her that he had returned the policy for cancellation. About the middle of the month of May she paid in $15 at his office, but he never forwarded that money to the appellees. He testified that he was awaiting payment of the balance.

On May 21, 1936, a fire completely destroyed all of the property described in the policy in question. The next day McGlone gave notice of the loss by a long-distance telephone call to deVeuve's office in San Francisco. In response to this notification, deVeuve, in a letter dated May 22, 1936, declared that the policy had been returned to the company "canceled flat," that is, that no earned premium was claimed by the insurer, that the policy had never gone into effect. He disclaimed absolutely any liability on the part of the appellees.

No demand for payment of the premium was made upon either of the appellants by the appellees or by any agent of theirs. No notice of cancellation was received by either of the appellants from the appellees. Not until after the fire did they become aware of the attempted cancellation. Appellant Tarleton, the mortgagee, had no knowledge of the existence of this particular policy, but she had been assured that the place was insured. She learned of this insurance five or six weeks subsequent to the fire, upon her return from a trip.

The lower court held that the policy of insurance sued upon in this action was not in force or in effect on May 21, 1936, the date of the fire loss and that at no time was a contract for fire insurance entered into or executed by and between these appellants, or either of them, on the one hand, and these appellees, or either of them, on the other. From that decision Mrs. McElligott and Mrs. Tarleton have appealed.

The questions before this court are: (1) Whether the insurance policy was ever in effect; (2) if so, whether it was incumbent upon the appellees, as required in the mortgage clause attached to, and made a part of, the policy, to have given Mrs. Tarleton, the mortgagee, ten days' notice before canceling in order for such cancellation to be effective with respect to her interest; and (3) whether the action of McGlone in returning to the appellees the policy, accompanied by a request to cancel it, sufficed to deprive Mrs. McElligott of any rights thereunder, particularly in view of the fact that he acted without her knowledge, without subsequently informing her of his action, and without procuring other insurance to take the place of the policy which he was attempting to cancel.

The appellees contend that when their agent, deVeuve, forwarded the policy to McGlone, he was merely making an offer to insure for three years Mrs. McElligott's property in return for a premium payment of $200; that the policy had been sent on approval only and that before the risk could attach, it was necessary for McGlone to communicate an acceptance to the appellees; and that because no such acceptance was ever transmitted, the policy was at no time in full force and effect. They maintain that McGlone, through Hubbs, Ulvilla, and Richards, had not made an offer to be accepted by them, but had merely invited them to make an offer. In endeavoring to show that it was just an invitation they point out that no mention was made of the amount of the premium when Hubbs agreed to obtain insurance in San Francisco and that therefore McGlone was only inquiring through Hubbs whether any company would carry the insurance and upon what terms. Further, because McGlone's principal, Mrs. McElligott, had expressly agreed to a premium of $150 when the policy covering her property was issued by the Lumberman's Underwriting Alliance in August of 1935, and had not so assented to a premium of $200, the insurance companies argue that if their policy was not an offer, it was, then, a counteroffer and that therefore it was necessary for the policy to be approved by her and her acceptance forwarded before the contract could be binding. They also contend that there can be no contract in this instance because no one had assumed liability for payment of the premium.

"* * * the contention that there was no valid contract of insurance, because there was a conditional delivery of the policy, is an affirmative defense. * * * And the burden rested upon appellant [the insurance company] to establish its defense that the delivery of the policy was a conditional delivery. * * *" Prindle v. Fidelity & Casualty Co., Mo. App., 233 S.W. 252, 255. The actions of the agent of the appellees and the other parties involved in the transaction contradict the allegation that the policy had been sent on approval only. Here all the evidence points to an unconditional and legal delivery. When the policy, duly countersigned, was mailed to McGlone, no instruction or restriction whatever accompanied its transmittal, nor was a bill for the premium enclosed.

"* * * in the absence of some such known or obvious restriction or incompleteness [as when the policy shows on its face that some act remains to be done to make it complete, e.g., the lack of a countersignature, when the policy recites that it will not be valid unless duly countersigned], the insured's possession of a policy creates a presumption of proper delivery after performance of all conditions precedent. * * *

"* * * And as mailing direct to the insured has been held sufficient to effect a delivery, so mailing a policy to the insured's broker, who procured the insurance, constitutes delivery to the insured." 1 Couch on Insurance, §§ 124, 125, pp. 230-231.

That delivery to the agent of the insured is sufficient was held in Kahn v. Royal Indemnity Company, 39 Cal.App. 180, 183, 178 P. 331, 332. There the court said: "As to the claim that the policy was never delivered to the insured, * * * it is sufficient to say that the policy was delivered to one Siegel, who had procured the policy at the instance and request, and as the broker, of deceased. The possession of the policy by his broker was as effectual as possession by the insured."

The following pertinent passage is from Volume 1 of Cooley's Briefs on the Law of Insurance, p. 644: "In view of the general rule that a delivery to the agent is a delivery to the insured, it has been held in numerous cases that the delivery is sufficient to give effect to the insurance, though the agent retains the policy in his own possession for safe-keeping, whether at the request of the insured or not, and the policy is not, in fact, actually given into the possession of the insured before the loss." That the policy was never in the possession of Mrs. McElligott is therefore immaterial as regards the validity of the contract.

Appellees allege that they were not liable under the policy because the premium had not been paid and no one had assumed responsibility for the payment thereof. In the policy before us there is a provision reading: "In Consideration of the Stipulation herein named and of Two Hundred and no/100 Dollars premium, [San Francisco Underwriters] Does insure Mary Ann McElligott for the term of Three Years," etc. There is no recital that the premium had been paid, and it is admitted and found that it was not. In Raulet v. Northwestern, etc., Ins. Co., 157 Cal. 213, 224, 107 P. 292, 296, the court said:

"* * * If plaintiff had understood payment to be the consideration and had intended to rely upon it, there would have been no such unconditional delivery of the policy without prepayment. From this latter circumstance the court was justified in concluding that the defendant extended credit, as within common knowledge is usually done in favor of responsible parties. To the aid of the court's finding may be summoned, also, the rule of construction generally recognized and well established that 'every indulgence not inconsistent with the plain meaning of the contract must be shown the assured.' It is the law, also, that, even though payment of the premium is expressly provided as the consideration, it is not a 'condition precedent to the operation of the policy and to any recovery on it.' [Cases cited.]"

"Neither is the payment or tender of the premium a condition precedent to a recovery by appellee.

"The parties had not expressly agreed when the premium should be paid and a reasonable time for the payment had not elapsed when the loss occurred. * * *

"No express agreement to pay the premium was necessary. If the O. J. Smith Company in procuring the insurance was acting as the agent of the appellee, the law would imply an agreement

to pay the premium." Sterling Fire Ins. Co. v. Comision Reguladora, 195 Ind. 29, 143 N.E. 2, 6.

■ "* * * Nor is payment or tender of premium on a fire policy a condition precedent, in the absence of any agreement as to when the premium must be paid. * * * In a number of other jurisdictions, the courts, including those of the United States, Alabama, *California*, Georgia, Oklahoma, Utah, and West Virginia, have declared that it is a condition subsequent." (Emphasis supplied.) 3 Couch on Insurance, § 625, p. 2004.

For further comment on the nonnecessity of prepayment of the premium see 14 R.C.L. § 130, pp. 957-958, and 5 R.C.L. Perm.Supp., p. 3718.

■ It is not necessary to the validity of a policy for the premium to have been paid beforehand, and even though there was no express agreement to pay, the liability of the insured for the payment of the premium becomes determined as of the date when the risk attaches.

■ "Where a valid contract of insurance has been effectuated, and the contract or policy has attached to the risk insured against, insured becomes liable for premiums earned during the life of the policy or contract of insurance." 32 C.J. § 345, p. 1209.

■ It would appear quite obvious that the party who personally dealt with the agent of the appellees and ordered the policy from them, namely, Mr. Richards, the broker, and to whom the appellees delivered the policy here sued upon, was primarily liable for the payment of the premium. He was the only party with whom the appellees dealt directly. The letter sent him by the companies placed that construction on the transaction. It stated: "* * * you have neglected to send with the policy your check for the earned premium * * *." Thus, the appellees knew and recognized the broker as their debtor. When the policy was forwarded to McGlone, it was done so unconditionally. Mrs. McElligott thought he had taken care of the payment of the premium, and he agreed with her that she could pay him at the end of sixty days. Without her knowledge and without notice to her McGlone forwarded the policy to Richards, who returned it to the appellees with the statement that by reason of sickness Mrs. McElligott could not pay.

■ By their actions McGlone and his principal must be regarded as having acquiesced in the contention of the companies that the policy was in force. McGlone had endeavored to contact Mrs. McElligott in order to collect the premium. Later, when the appellees claimed an earned premium, McGlone demanded the money of his principal, and she paid in part of it at his office.

■ There is no evidence that appellees looked to anyone but the broker for payment of the premium of said policy. Appellees had no direct interest in, and were in no way affected by, any arrangements made between the insured and the broker for payment of premium. The policy took effect from its date of issuance and delivery, and unless there was an arrangement to the contrary, the fact that the premium on the policy was unpaid by the insured to the broker at the time of the fire or unpaid by the broker to appellees, does not in any manner affect the enforcement of the terms of the insurance policy against appellees. Hooker v. American Indemnity Co., 12 Cal.App. 2d 116, 119, 54 P.2d 1128.

■ In the light of the conduct of McGlone and Mrs. McElligott, on the one hand, and of the appellees, on the other, considered with the facts above set out, we are impelled to the conclusion that all of the prerequisites for a valid and subsisting contract had been fulfilled; that beginning on March 5, 1936, the appellees and appellants were bound by a completed contract of insurance. The decisions in California support this holding.

"The most conclusive evidence that the policy had been delivered, that credit had been extended Hill, and that the policy was in full force and effect up to March 14, 1934, is the determined effort of the company to collect the earned premium up to that date * * *. This is an admission on its part that the policy had been delivered, for without its delivery no part of the premium could have been earned. It is also an admission that credit had been extended to Hill at least to March 14, 1934. It is also an admission that the policy was in full force and effect up to that date.

"It seems too clear for argument that Hill believed he was insured and that the company believed that it was his insurance carrier up to at least March 14, 1934. It

seems to us that the parties to the insurance contract by their conduct have placed a practical interpretation on the questions of delivery and extension of credit that must be construed as binding on the commission and on this court. [Cases cited.]" Hill v. Industrial Acc. Comm., 10 Cal.App. 2d 178, 185, 186, 51 P.2d 1126, 1130.

We conclude that the delivery of the policy to the insurance broker, McGlone, was equivalent to delivery to McElligott and that the policy was then in full force and effect.

The appellees contend that, by its provisions, the policy was voided by "other insurance" which the insured had on her property at the time. The evidence on this point is so vague, indefinite, and uncertain that it fails to show that there was any amount of "other insurance" on the property at the time of the issuance of the policy in suit. Besides the law in California makes this contention untenable; there is attached to the policy an agreement, or rider, which, inter alia, provides that "Other insurance permitted." "Where a printed provision of a policy is inconsistent with a rider, the latter controls, * * *." 7 Cal.Jur.Supp. § 28a, pp. 87-88.

We now examine the rights of the mortgagee, appellant Tarleton, under this policy. That appellant Tarleton was unaware of the existence of the insurance is of no import. To enable a mortgagee named in a mortgage clause to enforce a policy it is not essential that he have had knowledge of its existence before loss. Union Institution for Savings v. Phoenix Ins. Co., 196 Mass. 230, 81 N.E. 994, 995, 14 L.R.A.,N.S., 459, 13 Ann.Cas. 433; Federal Land Bank v. Atlas Assur. Co., 188 N.C. 747, 125 S.E. 631. Nor was acceptance of the policy required by the mortgagee to complete the contract. Federal Land Bank v. Atlas Assur. Co., supra.

The mortgage clause attached to, and made a part of, the policy involved herein, is in the form of the New York Standard Mortgage Clause and, in part, provides: "Subject to and in consideration of the terms, covenants and conditions set forth in this rider this insurance, as to *the interest of the mortgagee* only therein, *shall not be invalidated by any act or neglect of the mortgagor or owner* of the within described property, nor by any foreclosure or other proceedings, * -* *."

[Emphasis supplied.] "A provision that a mortgagee's interest in a policy shall not be 'invalidated' by any act of the owner means that it shall not be injuriously impaired or affected thereby, * * *." 14 R.C.L. 1086.

The viewpoint of the majority of the courts is contrary to the contention of the appellees that the rights of a mortgagee under a "standard" or "union" mortgage clause are merely those of a third party beneficiary. With but few exceptions, the courts are in agreement that where the interest of a mortgagee is protected by a standard or union mortgage clause, there exists an independent contract between the mortgagee and the insurer, and the mortgagee's rights under the mortgage clause cannot be invalidated by any act or neglect of the mortgagor or owner.

In New York Underwriters Ins. Co. v. Central Union Bank, 4 Cir., 65 F. 2d 738, 739 (certiorari denied, 290 U.S. 679, 54 S.Ct. 102, 78 L.Ed. 585), the court had this to say: "The mortgage clause protects the mortgagee against any act or neglect of the mortgagor, whether prior or subsequent to its execution. Syndicate Ins. Co. v. Bohn (C.C.A. 8th) 65 F. 165, 27 L.R.A. 614."

In Witherow v. United American Ins. Co., 101 Cal.App. 334, 340, 281 P. 668, 671, a case in which there was involved a mortgage clause containing a provision excepting the mortgagee's interest from being affected by any act or neglect of the mortgagor, the following language was used by the court: "Where an insurance policy is written in favor of an insured and has attached to it a mortgage clause providing that the loss be payable to the mortgagee as his interest may appear, there are, in effect, two separate contracts, one between the insurer and the mortgagor or owner of the property, and the other between the insurer and the mortgagee. The mortgagor may lose his right of recovery on the policy without affecting the mortgagee's rights. Seccombe v. Glens Falls Ins. Co., 45 Cal.App. 611, 188 P. 305; Welch v. British American Assur. Co., supra [148 Cal. 223, 82 P. 964, 113 Am.St.Rep. 223, 7 Ann.Cas. 396]."

For a collection of cases treating of the status of a mortgagee under a standard mortgage clause, see 97 A.L.R. 1165 ff. and, also, 14 R.C.L. 1038, 2 Williston on

Contracts, §§ 410A, pp. 1153-1157, and 5 Couch on Insurance, § 1215b, pp. 4435 ff.

As regards cancellation, the mortgage clause recites: "This Company reserves the right to cancel this policy at any time as provided by its terms, but in such case *this policy shall remain in force for the benefit only of the mortgagee for ten days after notice to the mortgagee of such cancellation,* and shall then cease; and this Company shall have the right on like notice to cancel this mortgagee clause." (Emphasis supplied.) It is admitted that no notice was ever sent to appellant Tarleton and that she had not consented to a cancellation. "* * * the defendant had no right to cancel the policy except by mutual consent of the insured, Mr. Spear, and the mortgagee, or by giving to the insured and the mortgagee ten days' notice in writing, as specified in the policy, and * * * the mortgagee's right to recover for the loss was not affected by the act of the insured and the defendant in their attempted cancellation of the policy." Gilman v. Commonwealth Ins. Co. of New York, 112 Me. 528, 92 A. 721, 723, L.R.A.1915C, 758. Thus no cancellation attempted by the mortgagor or insurer, of which the mortgagee was ignorant and to which she had not consented, could suffice to relieve the mortgagee of any rights arising under the mortgage clause.

"Notice to the mortgagee is a prerequisite to cancellation under a standard policy containing a mortgage clause * * *." 6 Couch on Insurance, § 1439, p. 5093. See also Lauman v. Springfield Fire Ins. Co., 184 Cal. 650, 195 P. 50, where it is held that the mortgagor in procuring insurance is not the agent of the mortgagee and that notice of cancellation to the mortgagor is not notice to the mortgagee.

In Welch v. British American Assur. Co., 148 Cal. 223, 226, 82 P. 964, 965, 113 Am.St.Rep. 223, 7 Ann.Cas. 396, it was said that "It is well established that conditions which provide for a forfeiture of the interest of the assured, or those claiming under the policy, are to be strictly construed against the insurance company, * * *." In view of the authorities we are constrained to hold that, in the absence of knowledge on the part of the mortgagee which would constitute a waiver, ten days' notice before cancellation was essential to extinguish the mortgagee's interest in the policy. We conclude, therefore, that the rights given Mrs. Tarleton by the mortgage clause had not been abrogated and that those rights remained full and intact at the time of the fire loss.

We now consider the attempted cancellation of the policy as it might affect the interests of appellant McElligott. The evidence shows that the insurance broker, McGlone, was to keep the property insured; that he was empowered to procure the insurance and to select the insurer; that he procured the policy in suit; that he informed Mrs. McElligott of the issuance of the policy and she agreed to pay the premium later. The collection letter from the company asserts that the policy was in effect as of its date. The evidence further establishes that McGlone returned the policy without the knowledge of Mrs. McElligott.

Appellees first contend that the policy was never in effect. It is not necessary to discuss this argument again as it has been disposed of heretofore in this opinion.

The decisions from the various courts upon the question of the authority of an insurance broker to effectuate the cancellation of a policy are not in harmony. This diversity will be apparent by comparing the case of Kooistra v. Rockford Ins. Co., 122 Mich. 626, 81 N.W. 568, upon which appellees largely rely, with the case of Spann v. Commercial Standard Ins. Co., 8 Cir., 82 F.2d 593. However, as by Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, we are required to follow the state decisions as to the law in the matter, we confine ourselves to examining cases from California, the place of the contract.

Appellees rely upon and cite two cases from that state: Stevenson v. Sun Insurance Office, 17 Cal.App. 280, 119 P. 529, and Ferrar v. Western Assurance Co., 30 Cal.App. 489, 159 P. 609, 611.

In the Stevenson case, supra, the court said that the question of cancellation depended upon the facts in the case, and there the evidence establishes that Stevenson had authorized Kenna, the broker through whom the insurance had been procured, to cancel the insurance. The policy had not been surrendered by the insured. The court held that the fact that the policy had been retained by the insured

did not prevent a cancellation. In the course of the opinion this language occurs [17 Cal.App. 280, 119 P. 531]: "It is undoubtedly the rule, as suggested by counsel for plaintiff, that ordinarily the authority of an insurance broker terminates when he has placed the insurance and delivered the policies to his principal and that under a mere employment to secure insurance no authority to cancel the same is given or implied. Authority to cancel, however, may be shown to have been conferred upon the broker, and, when shown his acts and agreements in that behalf will be imputed to and are binding upon the insured."

To make that case have application here it is urged that McGlone had ostensible, if not actual, authority to cancel the policy, because in a prior instance where a policy had been secured through McGlone he had returned it to the issuing company and it had been canceled. But it must be remembered that in that instance the policy had been delivered to Mrs. McElligott and that McGlone had later procured it from her for cancellation. In the case at bar McGlone acted on his own responsibility, without her knowledge, and thereafter misled her into the belief that the policy was still in effect by continuing to collect money for the premium. In these circumstances the case discussed is not controlling.

In the Ferrar case, supra, the plaintiff had told the insurance solicitor to insure her property and keep it insured. She did not care what company was selected, as long as it was a good one. The court held that this made the solicitor more than a mere soliciting agent and constituted him a general agent. The court, citing Stevenson v. Sun Ins. Office, supra, said: "Being her general agent for this purpose, we think he was authorized, as an incident of his employment, to accept and to act upon a notice of cancellation." 30 Cal. App. 489, at page 492, 159 P. at page 610.

 If there were no other cases from California to guide us, we might feel an obligation to sustain appellees' posi-

tion as to the effect of the attempted cancellation on Mrs. McElligott's claim. However, these cases have been distinguished and the principle involved elaborated in more recent decisions from the California courts. Thus, in the case of Lauman v. Springfield Fire, etc., Ins. Co., 184 Cal. 650, 652, 195 P. 50, 51, the court said: "* * * It is held in Ferrar v. Western Assur. Co., 30 Cal.App. 489, 159 P. 609, 611 * * *, that where a broker or agent is employed to keep the property insured, he had the authority to cancel as well as to procure insurance. But the authority to keep the property insured would not be authority to consent to a cancellation of insurance which would leave the property wholly without insurance." In the case at bar, if there had been a cancellation, the property would have been wholly without insurance. It seems now to be well settled by the California decisions that an agent of the insured to procure insurance is not an agent for cancellation, that in order to defeat an action upon a policy of insurance on the ground that the policy was canceled, it must be shown either that the conditions upon which the company was allowed to cancel the policy were strictly complied with or that the insured, knowing all the facts, waived such compliance. Quong Tue Sing v. Assurance Corp., 86 Cal. 566, 25 P. 58, 10 L.R.A. 144; Emery v. Pacific Employers Ins. Co., 8 Cal.2d 663, 67 P.2d 1046; Hooker v. American Indemnity Co., 12 Cal.App.2d 116, 54 P.2d 1128.

 The policy here having been in effect and the agent being without authority to cancel it, the company was required, before the policy could be canceled, to comply with the terms of the policy and give notice. It is admitted that this was not done. It follows that the policy was in effect at the time of the fire, and appellant McElligott is entitled to recover as her interest may appear.

The case is reversed and remanded for further proceedings in accordance with this opinion.