[Civ. No. 44896. First Dist., Div. Two. Feb. 20, 1980.]

FLORENCE MALINSKI, Plaintiff and Appellant, v. WEGMAN'S NURSERY & LANDSCAPING, INC., Defendant and Respondent.

**COUNSEL**

Aaronson, Dickerson & Lanzone and Steven J. Carpol for Plaintiff and Appellant.

Joseph C. Howard, Jr., and Branson, Fitzgerald & Howard for Defendant and Respondent.

**OPINION**

**LINDSAY, J.\***—Appellant, Florence Malinski, sought to recover damages for personal injuries allegedly suffered when she fell at the business establishment of respondent, Wegman's Nursery & Landscaping, Inc. Respondent relied upon, inter alia, the affirmative defense that the action was barred by the applicable statute of limitations: Code of Civil Procedure section 340, subdivision 3, which provides, in part, that the period for the commencement of "[a]n action for...injury to...one caused by the wrongful act or neglect of another..." is one year. On motion of respondent, that defense was bifurcated and heard by the trial court sitting without a jury under section 597 of the Code

---

\*Assigned by the Chairperson of the Judicial Council.

of Civil Procedure,[1] the trial court made findings and conclusions and entered judgment for respondent. This timely appeal followed.

The facts are clear and essentially uncontradicted. On April 6, 1975, appellant fell and was injured at respondent's place of business. Mrs. Wegman, one of the principals of respondent, was present at the time and encouraged appellant to go to Sequoia Hospital for treatment and to send the bill to respondent, as it had insurance to pay the medical bill. Respondent was insured against liability loss by St. Paul Fire and Marine Insurance Company (the St. Paul). The policy contained a $500 medical payment coverage provision under which persons injured would be paid without regard to any fault on the part of the premises owner or the injured party.

Appellant was treated at Sequoia Hospital and delivered its bill to Mrs. Wegman who forwarded it to respondent's insurance man for payment. He was out of town so payment was delayed. After a week had past, appellant's husband contacted Mrs. Wegman. He was upset because the Sequoia bill had not been paid, and was concerned about his credit rating. In order to placate the Malinskis, respondent's bookkeeper, on order of Mrs. Wegman, paid the hospital bill with the expectation of reimbursement from the St. Paul under the medical payment coverage of the policy.

Respondent was reimbursed by the St. Paul. The insurance company thereafter made additional payments totaling $500 under the medical payment coverage but made no payment under the policy's liability coverage. Neither respondent nor the St. Paul gave appellant written notice of the applicable statute of limitations.

The one-year limitation applicable to personal injury actions (Code Civ. Proc., § 340, subd. 3) would have run, if not tolled, on April 6, 1976. On April 13, 1976, the claims adjuster called appellant's attorney to ask whether suit had been filed within the limitation period, and the attorney expressed consternation and observed, "I guess I will have to report it to my carrier." Appellant's complaint was filed on April 15,

---

[1]Section 597 refers to special defenses in part as follows: "When the answer pleads that the action is barred by the statute of limitations, . . .the court may, upon the motion of either party, proceed to the trial of such special defense. . .before the trial of any other issue in the case, and if the decision of the court, . . .is in favor of the defendant pleading the same, judgment for such defendant shall thereupon be entered. . . ."

1976; it alleged that the limitation period had been tolled under Insurance Code section 11583 (hereinafter section 11583).[2]

Critical to appellant's contention that the limitation period was tolled under section 11583 is a determination that the first payment, made by respondent and subsequently reimbursed by the St. Paul to respondent, was initially made by a "person" rather than by "his insurer," within the meaning of the section. The trial court concluded, to the contrary, that respondent made the payment "on behalf of...[the] St. Paul" and "[t]hat Mrs. Wegman was acting as an agent for [the St. Paul] in making the payment...."

## A. RELEVANT CONTENTIONS

Respondent concedes that under section 11583 *any* advance or partial payment by a "person" is subject to the notice and tolling provisions of the section. ■ But respondent argues that in making the initial payment, it must be deemed to have acted as the agent of the St. Paul, its "insurer"; that the payment should thus be treated as having been made by the insurer; and that the insurer's payment did not invoke the tolling provision of section 11583 because it was ultimately made under the medical payment coverage; and therefore was not made "under liability insurance as defined in subdivision (a) of [Insurance Code] Section 108." In respondent's view, the medical payments coverage

---

[2]Insurance Code section 11583: "No advance payment or partial payment of damages made by any person, or made by his insurer under liability insurance as defined in subdivision (a) of Section 108, as an accommodation to an injured person or on his behalf to others or to the heirs at law or dependents of a deceased person because of an injury or death claim or potential claim against any person or insured shall be construed as an admission of liability by the person claimed against, or of that person's or the insurer's recognition of such liability, with respect to such injured or deceased person or with respect to any other claim arising from the same accident or event. Any such payments shall, however, constitute a credit and be deductible from any final settlement made or judgment rendered with respect to such injured or deceased person which does not expressly take into account such advance payments. Any person, including any insurer, who makes such an advance or partial payment, shall at the time of beginning payment, notify the recipient thereof in writing of the statute of limitations applicable to the cause of action which such recipient may bring against such person as a result of such injury or death, including any time limitations within which claims are required to be made against the state or any local public entity when such payments are made on behalf of such public entities. Failure to provide such written notice shall operate to *toll* any such applicable statute of limitations or time limitations from the time of such advance or partial payment until such written notice is actually given."

comes within subdivision (b)(1) rather than subdivision (a) of said section.[3]

Appellant contends that there is no evidence that respondent was authorized to make payment for the St. Paul; and that the subsequent reimbursement cannot be treated as a ratification of respondent's payment (and hence as a retroactive confirmation of respondent's agency) because a ratification cannot be effected to the prejudice of third persons without their consent.

### 1. *Precedent agency authorization*

There is no evidence that at the time of the initial payment, respondent was authorized by the St. Paul to make the payment on the insurer's behalf. Mrs. Wegman's testimony was that she was simply unable to reach the insurer's representative.

### 2. *Subsequent ratification*

Respondent points out that the St. Paul is a corporation which can only act through an individual agent. It contends that Mrs. Wegman was the individual agent of the St. Paul with respect to the initial payment. Respondent does not seriously contend that it or Mrs. Wegman had been authorized to make the payment for the St. Paul at the time it was made but relies instead upon Civil Code section 2307 which provides that "[a]n agency may be created, and an authority may be conferred, by . . . a subsequent ratification." It argues that the subsequent reimbursement was such a ratification (cf. *Rakestraw* v. *Rodrigues* (1972) 8 Cal.3d 67, 73 [104 Cal.Rptr. 57, 500 P.2d 1401]).

Appellant counters that such retroactivity would be impermissible in the circumstances of this action, citing Civil Code section 2313: "No

---

[3]Section 108 provides, in relevant part: "Liability insurance includes:

"(a) Insurance against loss resulting from liability for injury, fatal or nonfatal, suffered by any natural person, or resulting from liability for damage to property, or property interests of others but does not include worker's compensation, common carrier liability, boiler and machinery, or team and vehicle insurance.

"(b)(1) With respect to operations or property covered by a policy of liability insurance as defined in subdivision (a), insurance of medical, hospital, surgical and funeral loss or expense of the insured or other persons injured, and in the case of an automobile liability policy disability benefits to the insured or other persons injured and in the event of their death, funeral and accidental death benefits to their dependents, beneficiaries or personal representatives irrespective of legal liability of the insured, when issued with or supplemental to the insurance defined in subdivision (a); . . ."

unauthorized act can be made valid, retroactively, to the prejudice of third persons, without their consent" (hereinafter section 2313). Appellant relies on *Hooker* v. *American Indemnity Co.* (1936) 12 Cal.App.2d 116 [54 P.2d 1128]: A trucking company had instructed its insurance broker to obtain liability coverage for the company. The broker secured coverage from the appellant carrier. At trial, there was conflicting evidence as to whether the company had authorized the broker to cancel the policy. The broker felt he had authority and instructed the carrier to cancel the coverage. The carrier cancelled. The next day, Hooker was killed in an accident for which the trucking company was ultimately found to be liable. That same afternoon, the company made its first payment on the premium and the broker arranged to have coverage reissued from a time after the accident. When the broker subsequently learned of the accident, he advised the trucking company of the cancellation and that there had been no coverage at the time of the accident. The company continued to pay premiums on the new coverage, but insisted that it had not authorized the cancellation and that it was paying on the original coverage. Having obtained judgment against the company, Hooker's heirs sued the carrier and obtained judgment for the policy limit. The Court of Appeal affirmed, concluding that the broker had been neither actually nor ostensibly authorized to cancel the coverage and that the evidence supported the jury's determination that the company's subsequent premium payments had not effected a ratification of the cancellation. In dictum, the court, at page 123, declared: "There is, however, another reason which would prevent any cancellation of said policy by ratification of a cancellation by the insured. Section 2313 of the Civil Code provides: 'No unauthorized act can be made valid, retroactively, to the prejudice of third persons, without their consent.' The rights of the heirs at law (plaintiffs in this case) of the deceased, T. O. Hooker, had intervened before there was any ratification of the alleged cancellation by the insured. The loss or liability insured against in the insurance policy was for the benefit of these plaintiffs, and when their cause of action accrued no subsequent act of the insured could deprive them of it. [Citations omitted.]"

To appellant's section 2313 argument, respondent replies (a) that "only a principal may complain where an agent exceeds his authority," (b) that section 2313 applies only to "unauthorized" acts and "there was not one bit of evidence...that Wegman's payment...was 'unauthorized,'" (c) that section 2313 proscribes only retroactively, but here the reimbursement was made "immediately," long before the stat-

ute ran, and thus was not "a 'retroactive' validation" in the sense contemplated by section 2313, and (d) that appellant consented within the meaning of section 2313.

Respondent's technical argument lacks validity. Clearly, respondent (a "person" within the meaning of section 11583) made the initial payment, and at that time neither respondent nor Mrs. Wegman (who directed that the payment be made) had been authorized by the St. Paul to make the payment in its behalf. Under the literal terms of section 11583, no notice having been given with respect to the statute of limitations, the limitation period was to be tolled "from the time of such...payment until such written notice is actually given." Thus, by legislative fiat, appellant was released, forthwith upon respondent's "beginning payment," from the operation of the limitation period until a further legislatively specified act—the giving of written notice with respect to the statute of limitations—should occur. The St. Paul's reimbursement did not occur until *after* "beginning payment." If, as respondent contends, the reimbursement was to relate back to render respondent's "beginning payment" the act of the St. Paul and thus, nunc pro tunc, to cause the limitation period to continue to run as of and from the date of "beginning payment," then what respondent seeks is a *retroactive* authorization, to appellant's prejudice. Section 2313 bars such retroactivity. Respondent's argument that "there was not one bit of evidence" that respondent's payment was unauthorized is vacuous. The evidence and rudimentary law make quite clear that neither respondent nor Mrs. Wegman had been authorized at the time the payment was made. Respondent's contention that only a principal may challenge the scope of the agent's authority begs the question. The point is that respondent was *not* the St. Paul's agent at the time of beginning payment, and the question is whether by virtue of subsequent events respondent ever became the St. Paul's agent at that time and for that purpose. The record affords no basis for a finding that appellant was estopped to deny the very existence of the agency (cf. *Albert Steinfeld & Co.* v. *Broxholme* (1922) 59 Cal.App.623, 629 [211 P. 473]). In any event, the third party who stands to be prejudiced has a right to invoke section 2313 (cf. e.g., *Hooker* v. *American Indemnity Co., supra*, 12 Cal.App.2d at p. 123). Respondent's final contention, to the effect that appellant (by accepting the initial advance payment) *consented* to the ratification, is unreasonable. Of course she consented to the initial payment, but there is no showing that she then contemplated that the St. Paul would in any way adopt the payment as its own act. Nor is there

any showing that appellant subsequently became aware that the St. Paul had reimbursed respondent for the payment, much less that appellant was aware of, or in any sense acquiesced in, any "ratification" implicit in the reimbursement.

Restatement Second of Agency section 101, subdivision (c), is supportive of appellant's position. It reads: "Exceptions to Normal Effect of Ratification [¶] Ratification is not effective: [¶] (c) in diminution of the rights or other interests of persons not parties to the transaction which were acquired in the subject matter before affirmance." (See also 3 Cal.Jur.3d, Agency, § 84; 1 Witkin, Summary of Cal. Law (8th ed. 1973) p. 738.)

The record herein provides neither factual nor legal support for the trial court's conclusion that Mrs. Wegman acted as the St. Paul's agent in making the initial payment. For this reason, the judgment must be reversed.

B.  POLICY ANALYSIS

Policy considerations also support reversal.

Historical materials submitted to the trial court reinforce the conclusion, apparent on the face of section 11583, that the section was intended primarily to encourage early payments on prima facie meritorious claims. However, the Legislature (apparently at the behest of the California Trial Lawyers Association) also recognized a substantial risk that advance payments would tend to lull a claimant into a belief that the potential defendant and his carrier had acknowledged the validity of the claim and that no further proceedings would be required to perfect the claim (cf. *Llanera* v. *M & S Pipe Supply Co.* (1979) 92 Cal.App.3d 332, 336-337 [154 Cal.Rptr. 704]).

Thus, to encourage early payment, the Legislature provided that either a "person" or "his insurer" could make advance payments without thereby admitting liability. And, to protect credulous claimants, the Legislature further provided that such payments should be accompanied by written notice of the applicable statute of limitations and of any applicable public-entity claim procedures, and that failure to give such notice would toll the applicable limitation periods.

But section 11583 also draws distinctions between types of payer and types of payment. The parties agree that *any* kind of payment made by a "person" will invoke the notice and tolling provisions. But if the payer is the potential defendant's "insurer," then only payments under "insurance against loss resulting from liability" (Ins. Code, § 108, subd. (a)) will be subject to the notice and tolling provisions. Viewed from the perspective of the *payer* in light of the patent legislative purposes outlined above, these distinctions make some sense. For example, a carrier making an advance payment under a medical payment provision, applicable "irrespective of legal liability of the insured" (Ins. Code, § 108, subd. (b)(1)), obviously does not thereby in any sense *acknowledge* "legal liability of the insured." On the other hand, a "person" making such a payment is presumably paying out of a general fund, without reference to any insurance contract or comparable source of fault-no-fault distinctions. Any such payment might in some sense constitute an acknowledgement of liability.

From the viewpoint of the *claimant*, however, these distinctions do not make as much sense. The legislative premise appears to be that the average claimant is ingenuous to the degree necessary to be willing to accept an advance payment as an indication that his claim has been granted or, at least, that he need do nothing further to press it. This ingenuous claimant seems unlikely to be able to discriminate between a payment under subdivision (a) liability coverage and a payment under subdivision (b)(1) medical payment coverage. Either payment seems as likely to give him a false sense of euphoria.

Nor does it seem likely that the distinction between a payment from a "person" and a payment from "his insurer" is apt to make much difference to the ingenuous claimant. In either instance, he is apt to treat the payment as coming from a source he identifies with the individual he holds responsible and thus in the nature of an acknowledgement of responsibility, and is apt to let his guard down accordingly. Finally, the ingenuous claimant is likely to accord even less significance to a proposed distinction between a payment which a "person" tenders in his own behalf and a payment of the same size made by the same "person" as the agent of an insurer, particularly where the agency relationship does not currently exist but is to be established after the fact by an implied ratification.

In short, it is safe to conclude as an application of abstract policy that the Legislature was concerned that appellant Florence Ma-

linski would be misled to her detriment by the fact that respondent Wegman's Nursery had paid her initial hospital bill, and that the Legislature wanted appellant to receive, with such advance payment, notice to the effect that she might still have to initiate legal proceedings and that she had a finite period within which to do so. Respondent's advance, well intentioned as it was, nevertheless triggered the possibility of misunderstanding which the notice and tolling provisions were designed to guard against. The notice should have been given and was not.

The statute of limitations was tolled by nonconformance with section 11583 as a matter of law. Accordingly, the judgment is reversed and the action is remanded for trial on the merits of appellant's claim.

Taylor, P. J., and Rouse, J., concurred.