Filed 10/30/15  Bennett v. Progressive Casualty Ins. Co. CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| STEPHEN H. BENNETT et al.,<br><br>  Plaintiffs, Cross-defendants and Appellants,<br><br>    v.<br><br>PROGRESSIVE CASUALTY INSURANCE COMPANY,<br><br>  Defendant, Cross-complainant and Respondent,<br><br>CU BANCORP,<br><br>  Cross-defendant, Cross-complainant and Respondent. | G049243<br>(Consol. with G049990 & G050146)<br><br><br>(Super. Ct. No. 30-2011-00497143)<br><br>O P I N I O N |

　　　　Appeal from a judgment and postjudgment orders of the Superior Court of Orange County, Andrew P. Banks, Judge.  Affirmed.

Law Offices of Mary A. Lehman and Mary A. Lehman for Plaintiffs, Cross-defendants and Appellants.

Foley & Lardner, Kathryn M.S. Catherwood and Nicholas J. Fox for Defendant, Cross-complainant and Respondent.

Rutan & Tucker and Ira G. Riven for Cross-Defendant, Cross-complainant and Respondent.

* * *

Stephen H. Bennett and Richard T. Letwak (collectively, Plaintiffs) are certified public accountants who investigated allegations that Premier Commercial Bancorp, N.A. (Premier)[1], made "accounting misrepresentations" and breached certain warranties when it sold an Arizona bank in which it held a controlling interest. Letwak was one of Premier's directors and the chair of its audit committee. With Bennett's assistance, he undertook the investigation on his own initiative and without the approval of Premier or its insurer, Progressive Casualty Insurance Company (Progressive), which had accepted Premier's tender of the claim arising out of the sale subject to a reservation of rights.

After Premier settled the underlying claim, Plaintiffs billed Premier for nearly $170,000 as the cost of their investigation. Plaintiffs asked Premier to submit the bill to Progressive as a defense cost under Premier's insurance policy. Premier refused to submit the bill because Premier never hired Plaintiffs to conduct the investigation and it was concerned Progressive might view the bill as collusive or possibly even fraudulent. Premier thereafter settled their insurance claim with Progressive and released Progressive from all liability under the insurance policy, including all defense costs.

---

[1] CU Bancorp acquired Premier while this action was pending. We refer to the party as Premier because that was the entity's name at the time of the underlying events.

Plaintiffs then sought to recover directly from Premier, claiming Premier was liable for refusing to submit the bill to Progressive. Plaintiffs and Premier eventually settled their dispute over the bill, with Premier agreeing to pay Plaintiffs $99,000 in exchange for Plaintiffs releasing Premier and its "insurers" from liability relating to the bill. Plaintiffs also agreed not to contact Premier's "insurance carrier" regarding the bill. Nonetheless, Plaintiffs contacted Progressive and demanded it pay the bill. Plaintiffs filed this action when Progressive refused to pay.

Plaintiffs' operative complaint alleged a single cause of action seeking a judicial declaration of Plaintiffs' right under the insurance policy to recover directly from Progressive for the investigation Plaintiffs conducted on Premier's behalf. Plaintiffs offered a number of arguments on why the insurance policy required Progressive to pay Plaintiffs' bill, but the trial court concluded those arguments were irrelevant because Plaintiffs released Progressive from liability when it entered into the settlement with Premier. The trial court therefore granted Progressive summary judgment on Plaintiffs' complaint, finding their claim for declaratory relief was moot and therefore it did not matter how the court interpreted the insurance policy. For the same reasons, the trial court also granted Progressive summary adjudication on its cross-complaint against Plaintiffs for breach of the settlement agreement between Plaintiffs and Premier, and granted Premier summary adjudication on its cross-complaint seeking a judicial declaration that the settlement agreement barred Plaintiffs' claim against Progressive.

We affirm. The plain language of the settlement agreement conclusively showed Plaintiffs and Premier intended to make Progressive a third party beneficiary of that agreement when Plaintiffs released Progressive from "any and all . . . liabilities" relating to the cost of the investigation Plaintiffs conducted on Premier's behalf. Plaintiffs do not dispute these conclusions nor do they offer an alternative interpretation of the settlement agreement. Instead, Plaintiffs argue certain provisions in the insurance policy prevent Progressive from asserting its status as a third party beneficiary under the

3

settlement agreement.  As explained below, however, the plain language of the policy does not support Plaintiffs' contentions.

Plaintiffs also appeal from two postjudgment orders awarding Progressive and Premier attorney fees and costs under an attorney fee provision in the settlement agreement.  Plaintiffs' sole argument is that Progressive and Premier are not prevailing parties entitled to attorney fees if we reverse the trial court's judgment against Plaintiffs.  Because we affirm the trial court's judgment, we also affirm its attorney fee awards.

I

FACTS AND PROCEDURAL HISTORY

Letwak and Bennett are certified public accountants and the owners of Letwak & Bennett, an accountancy corporation (L&B).  Premier is a national banking institution that owns and operates community banks, and Letwak was one of its founding directors and the chair of its audit committee.  Progressive insured Premier under a "Directors & Officers/Company Liability Insurance Policy for Financial Institutions" (Policy).

Under the Policy, Progressive agreed to pay on Premier's behalf all losses resulting from a covered claim, but not to defend the claim.  Instead, Premier undertook the duty to defend itself and Progressive agreed to pay Premier's "Defense Costs," including all "reasonable and necessary legal fees and expenses incurred in defending or investigating any Claim and the cost of appeal, attachment or similar bonds."  The Policy also provided, "[Premier] shall not incur Defense Costs, admit liability for, settle, or offer to settle any Claim without [Progressive's] prior written consent, which shall not be unreasonably withheld."

Premier held a controlling interest in an Arizona bank that it sold to PCBA Acquisition, LLC (PCBA), which continued to operate the bank under the name Valley Capital Bank, N.A. (Valley).  In 2008, PCBA and Valley filed an arbitration against

4

Premier (hereinafter, the Valley Arbitration), alleging Premier made accounting misrepresentations and breached certain warranties in selling the bank. Premier tendered the Valley Arbitration to Progressive for coverage under the Policy. Progressive acknowledged receipt of the tender and the potential for coverage on some of the claims, but Progressive also reserved its right to deny coverage as more information became available.

Letwak, with Bennett's assistance, investigated the accounting misrepresentations alleged in the Valley Arbitration. He did so on his own initiative purportedly in his capacity as a Premier director and chair of its audit committee. No one else at Premier asked Letwak to undertake the investigation and no one obtained Progressive's prior written consent for the investigation. Neither Letwak nor L&B had a contract with Premier engaging them to conduct the investigation or otherwise setting forth the terms of their compensation for any work they performed. Letwak also testified he always intended to look exclusively to Progressive to pay their bill.

In September 2008, Premier negotiated a settlement of the Valley Arbitration. Under the proposed settlement, Premier agreed to pay PCBA and Valley $775,000, with $675,000 of that amount designated as damages on the alleged accounting misrepresentations claims. Premier asked Progressive to consent to the settlement. While Progressive was reviewing the proposed settlement, Letwak and Bennett sent Progressive a letter summarizing their investigation and concluding the Policy covered the accounting misrepresentation claims. Progressive nonetheless refused to consent to the settlement because it concluded the Policy did not cover any of the claims asserted in the Valley Arbitration, but Progressive agreed it would not assert its lack of consent to the settlement as an additional basis for denying coverage. Progressive therefore entered into the settlement with PCBA and Valley to resolve the Valley Arbitration.

Shortly after Premier settled the Valley Arbitration, L&B sent Premier a bill for $168,750, representing nearly 11 months of work Plaintiffs allegedly performed

5

to investigate the accounting misrepresentation claims in the Valley Arbitration (hereinafter, the L&B Bill). Plaintiffs asked Premier to submit the L&B Bill to Progressive as part of its claim for defense costs under the Policy, but Premier refused because it never hired Letwak to conduct an investigation, and it believed a bill from Letwak's accounting firm would appear collusive or even fraudulent.

In December 2008, Premier and Progressive settled their coverage dispute regarding the Valley Arbitration. In their settlement agreement (hereinafter, the Premier/Progressive Settlement Agreement), Progressive agreed to pay Premier $350,000 under the Policy, and Premier released Progressive from all claims arising out of or in any way involving the Valley Arbitration or Premier's settlement with PCBA and Valley, including "any claim by Premier for reimbursement of any past, present, or future attorneys' fees and costs incurred by Premier arising out of, based upon, by reason of, or in any way involving the [Valley] Arbitration and/or the Settlement Agreement [with PCBA and Valley]."

After Premier settled with Progressive and released its claim to any further benefits under the Policy, Plaintiffs demanded that Premier pay the L&B Bill directly, suggesting that Premier was liable for refusing to submit the L&B Bill to Progressive. In June 2009, Premier reached an agreement with Plaintiffs over the L&B Bill, with Premier agreeing to pay $99,000 for a full release and Letwak's resignation from Premier's board of directors. In the settlement agreement (hereinafter, the Plaintiffs/Premier Settlement Agreement), Plaintiffs, on their own behalf and on L&B's behalf, "fully release[d] and discharge[d] [Premier] and each of [its] past and current . . . insurers . . . from and against any and all debts, obligations, losses, costs, demands, actions, causes of action, claims, damages, contracts, agreements and liabilities of every nature and kind, both in law or in equity, which [Plaintiffs and L&B] . . . now have or have ever had, whether known or unknown, which relate to, are connected with or arise from in any manner, shape or form the Dispute."

6

The Plaintiffs/Premier Settlement Agreement defined the "Dispute" as that certain dispute "aris[ing] from the nature, extent and content of [the] services [described in the L&B Bill], the scope and amount of said billings and any and all issues and all claims that may arise therefrom or be connected therewith." Finally, under the Plaintiffs/Premier Settlement Agreement, Plaintiffs and L&B "agree[d] not to contact or address Premier's insurance carrier or attorneys, on any matter connected to, related to or arising from the Dispute."

In October 2009, despite agreeing not to contact Premier's insurance carrier regarding the L&B Bill, Plaintiffs contacted Progressive and demanded it pay the L&B Bill on Premier's behalf. Based on the releases in both the Premier/Progressive Settlement Agreement and the Plaintiffs/Premier Settlement Agreement, Progressive refused to pay the L&B Bill. Plaintiffs filed this action against Progressive, alleging in the operative first amended complaint a single cause of action seeking a judicial declaration of Plaintiffs' rights under the Policy to receive payment directly from Progressive for the work they performed to investigate the Valley Arbitration claims.[2]

Progressive answered the first amended complaint and filed a cross-complaint against Plaintiffs for breach of the Plaintiffs/Premier Settlement Agreement, specific performance of that same agreement, and injunctive relief. Progressive alleged it is a third party beneficiary under the release in the Plaintiffs/Premier Settlement Agreement, and Plaintiffs breached that agreement by suing Progressive for declaratory relief regarding a claim barred by the release. Progressive also alleged claims against Premier for breach of the Premier/Progressive Settlement Agreement, specific performance, and implied contractual indemnity because Premier

---

[2]    The first amended complaint also includes allegations regarding a dispute between Plaintiffs and Progressive over whether the Policy covered a lawsuit filed against Premier in Arizona. Plaintiffs, however, have abandoned those allegations on appeal.

7

had denied Progressive's request that Premier indemnify Progressive for the cost of defending Plaintiffs' lawsuit.

Based on Progressive's indemnification request, Premier filed a cross-complaint against Plaintiffs and L&B for breach of contract, specific performance, and declaratory relief. Premier alleged Plaintiffs and L&B breached the Plaintiffs/Premier Settlement Agreement by suing Progressive to collect the L&B Bill. Premier sought a judicial declaration that Plaintiffs' claims against Progressive are barred by the Plaintiffs/Premier Settlement Agreement.

All parties filed motions for summary judgment or summary adjudication: (1) Plaintiffs sought summary judgment on their declaratory relief complaint against Progressive; (2) Progressive sought summary judgment on Plaintiffs' declaratory relief complaint and summary adjudication on its breach of contract claim against Plaintiffs; and (3) Premier sought summary adjudication on its declaratory relief claim against Plaintiffs.

The trial court denied Plaintiffs' motion on several procedural grounds, including that the notice of motion sought summary judgment on claims not alleged in the operative complaint. The court granted Progressive's motion, finding (1) the Plaintiffs/Premier Settlement Agreement barred Plaintiffs from seeking payment for the L&B Bill under the Policy, and therefore Plaintiffs' claim for declaratory relief regarding their right to recover under the Policy was moot, and (2) Progressive was a third party beneficiary under the Plaintiffs/Premier Settlement Agreement and Plaintiffs breached that agreement by bringing their declaratory relief action against Progressive. Finally, the court granted Premier's motion, finding Premier was entitled to a judicial declaration that the Plaintiffs/Premier Settlement Agreement barred Plaintiffs' action against Progressive.

Following the trial court's rulings, Progressive and Premier dismissed all remaining claims alleged in their cross-complaints and the trial court entered judgment in their favor against Plaintiffs. Progressive and Premier then separately moved for an

8

award of attorney fees under the attorney fee provision in the Plaintiffs/Premier Settlement Agreement. The trial court granted both motions, awarding Progressive approximately $731,000 in attorney fees and costs and Premier approximately $300,000 in attorney fees and costs.

Plaintiffs separately appealed from the judgment and the two orders awarding attorney fees and costs. We consolidated the three appeals.

II

DISCUSSION

A.    *The Summary Judgment and Summary Adjudication Motions*

Plaintiffs challenge the trial court's rulings on (1) Progressive's motion for summary judgment on Plaintiff's first amended complaint for declaratory relief; (2) Progressive's motion for summary adjudication on the breach of contract claim alleged in its cross-complaint; and (3) Premier's motion for summary adjudication on the declaratory relief claim alleged in its cross-complaint. Plaintiffs do not challenge the trial court's ruling denying their motion for summary judgment on the first amended complaint. (See *Telish v. State Personnel Bd.* (2015) 234 Cal.App.4th 1479, 1487, fn. 4 (*Telish*) ["An appellant's failure to raise an argument in the opening brief waives the issue on appeal"].)

1.    Governing Summary Judgment Principles

""""The purpose of a summary judgment proceeding is to permit a party to show that material factual claims arising from the pleadings need not be tried because they are not in dispute.' [Citation.]"' [Citation.] A party may seek summary adjudication on whether a cause of action, affirmative defense, or punitive damages claim has merit or whether a defendant owed a duty to a plaintiff. [Citation.] 'A motion for summary adjudication . . . shall proceed in all procedural respects as a motion for

9

summary judgment.'" (*California Bank & Trust v. Lawlor* (2013) 222 Cal.App.4th 625, 630 (*Lawlor*).)

"The moving party 'bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact.' [Citation.] To meet that burden, a plaintiff seeking summary adjudication on a cause of action must present evidence sufficient to establish every element of that cause of action. A plaintiff's initial burden, however, does not include disproving any affirmative defenses the defendant asserts." (*Lawlor*, *supra*, 222 Cal.App.4th at pp. 630-631.) "'A defendant moving for summary judgment . . . can meet [its initial] burden by either showing the plaintiff cannot establish one or more elements of his or her cause of action or there is a complete defense to the claim.'" (*Swanson v. Morongo Unified Sch. Dist.* (2014) 232 Cal.App.4th 954, 962 (*Swanson*).) The moving party's evidence must establish it is entitled to judgment as a matter of law. (*Ibid.*)

Once the moving party meets its initial burden, the burden shifts to the opposing party to present evidence establishing a triable issue exists on one or more material facts. (*Swanson*, *supra*, 232 Cal.App.4th at p. 963.) "A triable issue of material fact exists '"if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." [Citation.] Thus, a party "cannot avoid summary [adjudication] by asserting facts based on mere speculation and conjecture, but instead must produce admissible evidence raising a triable issue of fact. [Citation.]" [Citation.]'" (*Lawlor*, *supra*, 222 Cal.App.4th at p. 631.)

"We review de novo a trial court's ruling on a summary adjudication motion. [Citation.] '"[I]n practical effect, we assume the role of a trial court and apply the same rules and standards that govern a trial court's determination of a motion for summary [adjudication]." [Citation.] "Regardless of how the trial court reached its decision, it falls to us to examine the record de novo and independently determine

10

whether that decision is correct." [Citations.]'" (*Lawlor*, *supra*, 222 Cal.App.4th at p. 631.)

        2.        The Trial Court Properly Granted Progressive Summary Judgment on Plaintiffs' Complaint for Declaratory Relief

        a.        *Progressive Met Its Initial Summary Judgment Burden*

In their first amended complaint, Plaintiffs alleged a single cause of action seeking a judicial declaration that the Policy granted them an independent right of action against Progressive to recover for the services described in the L&B Bill because those services constituted defense costs on the Valley Arbitration claim.[3] Progressive sought summary judgment on Plaintiffs' complaint, arguing the declaratory relief claim was moot because Plaintiffs released all claims relating to the L&B Bill when they entered into the Plaintiffs/Premier Settlement Agreement, and therefore Plaintiffs may not recover no matter how the court interpreted the Policy. To meet its initial summary

---

    [3]       In their opening brief, Plaintiffs contend they "seek a determination on whether, notwithstanding the [Plaintiffs/Premier Settlement Agreement] or the [Premier/Progressive Settlement Agreement], under the Policy, Progressive must pay the Defense Costs incurred investigating and defending the [Valley Arbitration]." Plaintiffs' operative first amended complaint seeks no such determination. Indeed, the first amended complaint does not even mention the Plaintiffs/Premier Settlement Agreement or the Premier/Progressive Settlement Agreement, let alone request a judicial determination that the releases included in those agreements do not prevent Plaintiffs from recovering directly from Progressive for the work described in the L&B Bill. Moreover, Plaintiffs did not argue this version of their claim in the trial court.

    A party may not seek or oppose summary judgment on a claim, defense, or issue that is not alleged in the operative pleading. Neither the moving nor opposition papers may act as a substitute for an amendment to the operative pleading and the failure to timely amend the pleading to allege the new claim, defense, or issue waives the right to do so. (*Hutton v. Fidelity National Title Co.* (2013) 213 Cal.App.4th 486, 493.) Similarly, a party waives a claim by failing to raise it in the trial court; a claim may not be raised for the first time on appeal. (*Greenwich S.F., LLC v. Wong* (2010) 190 Cal.App.4th 739, 767.)

11

judgment burden, Progressive points to the language of the release included in the Plaintiffs/Premier Settlement Agreement and argues it is a third party beneficiary of that release.

"[T]he interpretation of a release or settlement agreement is governed by the same principles applicable to any other contractual agreement." (*General Motors Corp. v. Superior Court* (1993) 12 Cal.App.4th 435, 439 (*General Motors*).) "'Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. [Citation.] Such intent is to be inferred, if possible, solely from the written provisions of the contract. [Citation.] The "clear and explicit" meaning of these provisions, interpreted in their "ordinary and popular sense," unless "used by the parties in a technical sense or a special meaning is given to them by usage" [citation], controls judicial interpretation. [Citation.] Thus, if the meaning a layperson would ascribe to contract language is not ambiguous, we apply that meaning. [Citations.]'" (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 608.)

"A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it." (Civ. Code, § 1559.) "'[T]he third party need not be identified by name. It is sufficient if the claimant belongs to a class of persons for whose benefit it was made. [Citation.] A third party may qualify as a contract beneficiary where the contracting parties must have intended to benefit that individual, an intent which must appear in the terms of the agreement. [Citation.]'" (*Brinton v. Bankers Pension Services, Inc.* (1999) 76 Cal.App.4th 550, 558; see *Performance Plastering v. Richmond American Homes of California, Inc.* (2007) 153 Cal.App.4th 659, 667 (*Performance Plastering*); *General Motors*, *supra*, 12 Cal.App.4th at p. 444.)

In *Performance Plastering*, the Court of Appeal held an insurance company was a third party beneficiary entitled to enforce a release between its insured and a party making a claim against the insured. There, a developer and a subcontractor entered into a

settlement agreement resolving a dispute over the work the subcontractor performed at the developer's housing project. In exchange for a monetary payment, the developer agreed to "'release[] and forever discharge[] Subcontractor *and its insurers*'" from any and all claims relating to the work the subcontractor performed. (*Performance Plastering*, *supra*, 153 Cal.App.4th at p. 663, italics added.)

When the developer later demanded additional money from the subcontractor based on the same work, the subcontractor's insurer sought a judicial declaration that the earlier release barred the developer from seeking additional money. The insurer brought the action because the subcontractor's corporate status had been suspended and the insurer would be liable for any additional money the subcontractor owed. The trial court sustained the developer's demurrer to the insurer's claim, concluding the insurer lacked standing because it was not a party to the settlement agreement. (*Performance Plastering*, *supra*, 153 Cal.App.4th at p. 664.) The Court of Appeal reversed, finding the insurer was a third party beneficiary with standing to enforce the settlement agreement because the agreement released the subcontractor "and its insurers." (*Id*. at p. 667, italics omitted.) The appellate court concluded this language established the subcontractor's insurer "was one of a class for whose benefit the . . . settlement agreement[ was] made." (*Ibid*.; see *General Motors*, *supra*, 12 Cal.App.4th at pp. 439-441, 444 [automobile manufacturer among class of persons entitled to enforce release between drivers involved in automobile accident because release broadly discharged everyone from liability arising out of the accident by stating it applied to "'any and all persons, firms and corporations, whether herein named or referred to or not'"].)

Here, as quoted above, the Plaintiffs/Premier Settlement Agreement's plain language states Plaintiffs released not only Premier, but also its "insurers," from all claims and liabilities relating to the L&B Bill and the services described therein. It is undisputed Plaintiffs were aware of Progressive's status as Premier's insurer and

13

Progressive's potential liability for the L&B Bill when Plaintiffs entered into the Plaintiffs/Premier Settlement Agreement. Several months earlier, Plaintiffs had submitted the L&B Bill to Premier and repeatedly asked Premier to include the bill in its claim for the Valley Arbitration defense costs under the Policy. When Premier denied those requests and settled its coverage dispute with Progressive, Plaintiffs attempted to collect the L&B Bill from Premier. Those efforts culminated in Premier agreeing to pay Plaintiffs $99,000 in exchange for Plaintiffs releasing all claims they had relating to the L&B Bill, including all claims against Premier's "insurers." By presenting these facts, Progressive met its initial burden to show Plaintiffs' declaratory relief claim was moot because Plaintiffs' released Progressive from all liability relating to the L&B Bill and therefore Plaintiffs may not recover from Progressive no matter how the Policy is interpreted. (See *Gabaldon v. United Farm Workers Organizing Committee* (1973) 35 Cal.App.3d 757, 762 [declaratory relief claim moot when court cannot grant effective relief].)

   b.  *Plaintiffs Failed to Establish a Triable Issue of Fact*

     Plaintiffs do not dispute the Plaintiffs/Premier Settlement Agreement's plain language establishes Progressive is a third party beneficiary under that agreement and the release bars Plaintiffs from asserting any claim against Progressive relating to the L&B Bill. Instead, Plaintiffs contend "Progressive is barred from claiming it is a third party beneficiary" under the Plaintiffs/Premier Settlement Agreement based on three separate provisions in the Policy.[4] Plaintiffs' contentions lack merit and fail to establish a triable issue.

---

   4  In their reply, Plaintiffs also contend Progressive is barred from claiming it is a third party beneficiary under the Plaintiffs/Premier Settlement Agreement because Progressive dismissed its cross-complaint against Premier with prejudice. According to Plaintiffs, that cross-complaint also raised the question whether Progressive is a third party beneficiary, and therefore Progressive's voluntary dismissal of that pleading with prejudice operates as "a final and binding determination that Progressive is not a third

14

First, Plaintiffs contend Progressive cannot claim the benefit of the Plaintiffs/Premier Settlement Agreement's release because Progressive failed to offer evidence it complied with section IX(A)(2) of the Policy, which required Progressive to consent to the settlement. Plaintiffs further contend Civil Code section 2313 and various case authorities prevent Progressive from retroactively giving its consent. (See *Malinski v. Wegman's Nursery & Landscaping, Inc.* (1980) 102 Cal.App.3d 282, 290; *Hooker v. American Indemnity Co.* (1936) 12 Cal.App.2d 116, 123.) Plaintiffs misconstrue the Policy.

Section IX(A)(2) of the Policy states, "The Insured shall not . . . settle . . . any Claim without the Insurer's prior written consent." The Policy defines "Claim" as "any of the following instituted against an Insured Person or against the Company, but only to the extent coverage is granted to the Company: [¶] (1) a written or oral demand for monetary damages or non-monetary relief; [¶] (2) a civil proceeding commenced by

party beneficiary" based on the doctrines of retraxit and res judicata. (Some capitalization omitted.) This contention fails.

First, Plaintiffs forfeited it by waiting until the reply brief to raise it. (*L.A. Taxi Cooperative, Inc. v. The Independent Taxi Owners Assn. of Los Angeles* (2015) 239 Cal.App.4th 918, 927, fn. 7 ["contention forfeited where raised for the first time in reply brief without a showing of good cause"].) Second, the only claims Progressive dismissed with prejudice were its claims against Premier for breach of the Premier/Progressive Settlement Agreement, specific performance of that same agreement, and implied contractual indemnity based on that same agreement. None of these claims are based on the Plaintiffs/Premier Settlement Agreement or allege Progressive is a third party beneficiary of that agreement. Third, the dismissal occurred *after* the trial court already had granted Progressive summary adjudication on its claim against Plaintiffs for breach of the Plaintiffs/Premier Settlement Agreement on the theory Progressive was a third party beneficiary of that agreement. The doctrines of retraxit and res judicata bar subsequent litigation on a claim dismissed with prejudice. The doctrines do not apply to prior litigation. (See *Alpha Mechanical, Heating & Air Conditioning, Inc. v. Travelers Casualty & Surety Co. of America* (2005) 133 Cal.App.4th 1319, 1330 ["'A retraxit is a judgment on the merits preventing a subsequent action on the dismissed claim'"].)

15

the service of a complaint or similar pleading; [and ¶] . . . [¶] (4) an arbitration or mediation proceeding in which monetary damages are sought; [¶] . . . [¶] *for a Wrongful Act* including any appeal from such proceeding." (Italics added.)

Plaintiffs concede their request to have Progressive pay the L&B Bill as part of Premier's defense costs for the Valley Arbitration is not a "Claim" under the Policy. Indeed, Plaintiffs acknowledge that under the Policy the Valley Arbitration claim is the only claim based on a purported wrongful act by an insured. Accordingly, Progressive was not required to consent to the settlement between Plaintiffs and Premier regarding the L&B Bill, and section IX(A)(2) does not prevent Progressive from asserting the Plaintiffs/Premier Settlement Agreement's release as a third party beneficiary.

Next, Plaintiffs contend the Policy's "'Insured Versus Insured' exclusion" prevents Progressive from claiming to be a third party beneficiary under the Plaintiffs/Premier Settlement Agreement. According to Plaintiffs, this exclusion prevents Progressive from deriving any benefit from the Plaintiffs/Premier Settlement Agreement and its release because both Letwak, in his capacity as one of Premier's directors, and Premier are insureds under the Policy, and the Plaintiffs/Premier Settlement Agreement resolves a dispute between those two insureds. Again, Plaintiffs misconstrue the Policy.

The Policy's "Insured vs. Insured Exclusion" provides, "The Insurer shall not be liable to make any payment for Loss in connection with any Claim by, on behalf of, or at the behest of the Company . . . or any Insured Person in any capacity." This exclusion excludes from the Policy's coverage any "Claim" made by a person insured under the Policy. As explained above, Plaintiffs concede their request for payment on the L&B Bill is not a "Claim" under the Policy, and therefore this exclusion does not apply. Moreover, this exclusion relieves Progressive of the obligation to pay a claim it otherwise would be required to pay under the Policy. If the exclusion applied here, it would excuse Progressive from paying the L&B Bill and any damages resulting from Premier's refusal

16

to submit the bill to Progressive; the exclusion would not prevent Progressive from asserting the protection of a release that was clearly intended for its benefit.

As further support for this argument, Plaintiffs cite *Longoria v. Hengehold Motor Co.* (1983) 142 Cal.App.3d 1059 (*Longoria*), for the proposition that "an insurer is prohibited from being involved in disputes between its two insureds or, at the very least, from taking advantage of such disputes." According to Plaintiffs, Progressive's reliance on the Plaintiffs/Premier Settlement Agreement's release violates the *Longoria* rule because it "creates a conflict of interest by pitting Progressive against its own insured, Letwak." We disagree.

In *Longoria*, a husband was involved in an automobile accident with his wife while he was driving his employer's vehicle and she was driving the couple's vehicle. The couple's insurer paid for the damage to their vehicle and then brought a subrogation action against the husband's employer under a statute holding a vehicle's owner liable for damage negligently caused by a permissive user. The employer demurred to the insurer's complaint based on a related statute authorizing the owner to recover from the permissive user for any liability imposed on the owner based on the user's negligent use of the vehicle. (*Longoria*, *supra*, 142 Cal.App.3d at p. 1060.) According to the employer, the combined effect of these two statutes allowed the insurer to obtain subrogation from its own insured for a loss covered by the underlying policy and thereby permit the insurer to avoid the coverage that the insured purchased. The trial court agreed and sustained the demurrer without leave to amend. The *Longoria* court affirmed based on established case law prohibiting an insurer from obtaining subrogation from its own insured. (*Id*. at p. 1061.) Contrary to Plaintiffs' contention, the *Longoria* court did not address whether an insurer could profit from disputes between its insureds. Nor was an insured versus insured exclusion at issue in *Longoria*.

Here, we are not concerned with a subrogation claim. Nor does the record show Progressive attempted to obtain payment from an insured for a loss covered under

17

the Policy. On its own, Premier rejected Plaintiffs' request that it submit the L&B Bill to Progressive as part of Premier's defense costs for the Valley Arbitration. After Progressive received all of Premier's documentation regarding its defense costs, Progressive and Premier negotiated a settlement of their coverage dispute regarding the Valley Arbitration. That settlement resulted in Progressive making a significant payment to Premier under the Policy in exchange for Premier releasing all claims it had against Progressive relating to the Valley Arbitration, including all claims for defense costs. Because Premier released Progressive from all of its claims for defense costs, Plaintiffs then looked to Premier directly for payment of the L&B Bill. Eventually, Plaintiffs and Premier reached a settlement, with Premier agreeing to pay a majority of the L&B Bill in exchange for Plaintiffs releasing all claims relating to that bill. Plaintiffs present no evidence to show Progressive either involved itself in the dispute between Plaintiffs and Premier or took advantage of that dispute. Rather, the undisputed evidence shows Progressive merely asserted a release that was intended for its benefit to prevent Plaintiffs from recovering twice for the L&B Bill. *Longoria* does not apply to these facts.

Finally, Plaintiffs contend Progressive cannot assert the Plaintiffs/Premier Settlement Agreement's release as a bar to liability for the L&B Bill because the Policy is a "'pay on behalf of'" policy that required Progressive to pay all defense costs directly to the vendors who provided the services. According to Plaintiffs, the policy's terms made Progressive directly liable for all defense costs, and therefore any release Plaintiffs executed to discharge Premier from liability for the defense costs described in the L&B Bill is irrelevant to Progressive's liability for those costs. Not so.

In making this argument, Plaintiffs focus on the Policy term that requires Progressive to pay defense costs "on behalf of [the insured]" and also the Policy's definition of the term "Loss." Plaintiffs, however, ignore the Plaintiffs/Premier Settlement Agreement's plain language. Even if we assume the Policy required Progressive to pay Plaintiffs directly for the defense costs described in the L&B Bill,

18

Plaintiffs provide no explanation why the release does not discharge Progressive from liability for those costs. As described above, the Plaintiffs/Premier Settlement Agreement's release discharges not only Premier, but also its "insurers," from all liabilities relating to the L&B Bill. The Plaintiffs/Premier Settlement Agreement also prohibits Plaintiffs from even contacting "Premier's insurance carrier" about the L&B Bill. Accordingly, no matter what liability the Policy imposed on Progressive regarding the L&B Bill, Plaintiffs released Progressive from that liability by signing the Plaintiffs/Premier Settlement Agreement.

We therefore conclude Plaintiffs failed to establish a triable issue on their declaratory relief claim and the trial court properly granted Progressive's summary judgment motion. Because we conclude the Plaintiffs/Premier Settlement Agreement's release renders Plaintiff's declaratory relief claim moot, we do not address the numerous other challenges Progressive asserted, including whether Plaintiffs had standing to pursue declaratory relief under the Policy and whether the release included in the Premier/Progressive Settlement Agreement barred Plaintiffs from recovering from Progressive for the L&B Bill.

3. The Trial Court Properly Granted Progressive and Premier Summary Adjudication on their Cross-Complaints Against Plaintiffs

In its cross-complaint, Progressive alleged a breach of contract claim against Plaintiffs on the theory Progressive was a third party beneficiary under the Plaintiffs/Premier Settlement Agreement and Plaintiffs breached that agreement by suing Progressive to recover on a claim they released when they entered into the agreement. Similarly, in its cross-complaint, Premier sought a judicial declaration the release in the Plaintiff/Premier Settlement Agreement barred Plaintiffs' declaratory relief claim against Progressive.

Progressive and Premier sought summary adjudication on these claims based on the plain language of the release in the Plaintiffs/Premier Settlement Agreement

19

and Plaintiffs' declaratory relief claim. The trial court granted these motions and Plaintiffs appealed. Plaintiffs, however, do not state any separate challenges to the trial court's ruling on these motions. Instead, Plaintiffs merely incorporate the challenges they stated to the trial court's ruling granting Progressive summary judgment on Plaintiffs' declaratory relief claim. Accordingly, Plaintiffs waived all other challenges to these rulings (*Telish*, *supra*, 234 Cal.App.4th at p. 1487, fn. 4), and we affirm for the reasons set forth above.

B.      *The Attorney Fee Motions*

After the trial court entered judgment against Plaintiffs, it granted Progressive's and Premier's motions for attorney fees and awarded each of them substantial fees and costs under the attorney fee provision in the Plaintiffs/Premier Settlement Agreement. Plaintiffs challenge those awards, but they based their argument solely on the assumption we will reverse the judgment. Plaintiffs otherwise do not challenge Progressive's or Premier's entitlement to attorney fees or the reasonableness of the amounts the trial court awarded. Indeed, Plaintiffs do not include any of the moving or opposition papers for the attorney fee motions in the record. Plaintiffs therefore waived all other challenges to the attorney fee awards. (*Telish*, *supra*, 234 Cal.App.4th at p. 1487, fn. 4 [waive appellate challenge by failing to raise it in opening brief]; *Oliveira v. Kiesler* (2012) 206 Cal.App.4th 1349, 1362 [failure to provide adequate record for review requires issue to be resolved against appellant].) We affirm the awards because we affirm the judgment.

## III

### DISPOSITION

The judgment and postjudgment orders are affirmed. Progressive and Premier shall recover their costs on appeal.

ARONSON, ACTING P. J.

WE CONCUR:

IKOLA, J.

THOMPSON, J.